LEWIS & AL. *app'ts. vs.* WEBB, *adm'r.*

The Legislature of this State have no authority, by the Constitution, to pass any act or resolve granting an appeal or a new trial in any cause between private citizens, or dispensing with any general law in favor of a particular case.

AT the last *May* term, on opening this case, which was an appeal from a decree of the Judge of Probate, granted by virtue of a resolve of the legislature, it appeared that the appellants were sureties of *Joshua Webb* on his bond, as administrator on the estate of his father, *Jonathan Webb*, deceased ;—that the administrator had become insolvent ;—that after his insolvency, viz. *April* 29, 1819, he was induced to settle an account at the Probate office by a decree of the Judge, charging himself with about nine thousand dollars, for mill rents growing due and received

since the decease of the intestate, and seven years' interest thereon; and for debts due from the administrator to the intestate at the time of his decease, and for interest thereon since that time to the settlement of the account ;—that of the nature or existence of this account, or of the decree thereon, the bondsmen had no knowledge till long after the time allowed by law to claim an appeal had elapsed ;—that on discovery of their liability by law to pay the amount of the decree so obtained, they applied to the legislature for relief ; and procured the passage of a resolve *Feb.* 17, 1824, granting them the right of appeal from the decree of the Judge of Probate, and directing and authorizing him to allow, and this Court *to sustain, proceed, and decree* in the same, in the like manner as if the appeal had been claimed and granted on the day of making the decree.

*Longfellow* and *Greenleaf*, for the appellants, were called upon by the Court to shew on what constitutional grounds this appeal could be sustained, if the granting of it was a judicial act ; the Legislature being expressly prohibited from exercising any functions of the judiciary, by the constitution, *art. 3, sec. 2.*

To this point they argued, that this provision of our constitution was substantially the same with that of the bill of rights, *art. 30,* in the constitution of *Massachusetts*, under which appeals, reviews and new trials had been granted in very many instances, which they cited ;—that when a similar provision was inserted in the constitution of this State, it was adopted together with its uniform and well known *contemporaneous exposition* ;—and that if this exposition was not intended to have been received together with the article, a different language would have been used.

The case of *Merrill v. Sherburne* 1 *Adams* 199, in *New-Hampshire* they said was no authority to the contrary ; because in that State the practice had not been uniform, the right of the legislature to grant new trials having been denied by the Courts on various occasions ever since the adoption of their constitution in 1792.

*Emery*, on the other side, denied the validity of the resolve ; maintaining that it was unconstitutional, because it disturbed the

rights which were already vested under the decree of the Judge of Probate,—was retrospective in its operation,—and was in effect a repeal, *pro hac vice*, of the general laws. Constitution of *Maine, art.* 1, *sec.* 11. It is also a *judicial* act, and therefore transcends the powers of the legislature, to which this authority is expressly interdicted by *art. 3, sec.* 1, 2. See *Davis v. Davis* 1 *Pick.* 206. Any change in the common law course of proceedings in trials was viewed with jealousy in *England*, as early as the reign of *Hen.* 4. *3 Reeve's Hist. Eng. law*, 227,—and all attempts to impair the obligation of contracts, or infringe vested rights by legislation, are resisted with vigor by the Judges both of that country and of this. 2 *Show.* 17. *Couch v. Jeffries* 4 *Burr.* 2460. It is not supposed, for a moment, that the legislature ever intend to give their laws that effect. 1 *Tucker's Blackst.* 416. 5 *Mass.* 534. *Holden v. James* 11 *Mass.* 396. *Merrill v. Sherburne* 1 *Adams* 199. *King v. Dedham Bank* 15 *Mass.* 454. 16 *Mass.* 84, 270. *Dash v. Van Kleick* 7 *Johns.* 477. 8 *Johns.* 520. *Federalist, No's.* 33, 44, 47, 81. Whatever may have been the practice under the colonial charters, in which the legislative and judicial departments are frequently confounded, or from whatever causes the same irregularities may have been continued under the constitution of the parent State, the language of our own constitution is too explicit to be misunderstood, and too imperative to be disregarded.

MELLEN, C. J. at the *August* term this year in *Oxford*, delivered the opinion of the Court as follows.

This cause assumes an importance from the very nature of the question before the Court ; because it has immediate respect to the boundary lines of those powers which are given by the constitution of this State to the legislative and judicial departments. These lines are not drawn in the constitution with distinctness, but by the use of certain general expressions, which will be presently considered. It seems at the present day to be an established principle in our country, as well as in many other parts of the world, that the three great powers of government, the legislative, the executive, and the judicial, should be pre-

Lewis & al. *v.* Webb.

served as distinct from, and independent of each other, as the nature of society, human imperfections, and peculiar circumstances will admit. And the more this independence of each department, within its constitutional limits, can be preserved, the nearer the system will approach the perfection of civil government, and the security of civil liberty. Thus the wisdom and virtue of society are called upon to give strength and support to this vital principle ; thereby guarding the system against those disorders and diseases which are too apt to endanger its stability and derange its operations. The science of government has gradually become better understood, by a careful attention to the lessons of experience ; and those who framed the constitution of the United States and of this State have acted under the influence and been guided by the dictates of this best of instructors. The same remark is applicable to most of the States in the Union.

The first section of the third article of our constitution is in these words ; viz. " The powers of this government shall be " divided into three distinct departments ; the legislative, the " executive, and the judicial." The second section of the same article declares that " no person or persons belonging to one of " those departments, shall exercise any of the powers properly " belonging to either of the others except in cases herein ex- " pressly directed or permitted. It is not necessary for us on this occasion, to particularize the cases thus expressly excepted; because none of them are deemed to have any bearing upon the point to be decided in this cause.

The first section of the fourth article of the third part of the constitution authorizes the legislature " to make and establish all reasonable laws and regulations for the defence and benefit of the people of this State, not repugnant to this constitution, nor to that of the United States." Under this grant of power from the people to the legislature all constitutional resolves and public and private, or general and special laws are enacted.

The first section of the sixth article of the fourth part of the constitution declares that " the judicial power of this State shall " be vested in a Supreme Judicial Court, and such other Courts " as the legislature shall from time to time establish."

The nineteenth section of the declaration of rights declares that " Every person, for an injury done him in his person, repu- " tation, property or immunities, shall have remedy by due course " of law."

By the laws in force at the time said resolve was passed, the judicial power was vested in this Court, the Court of Common Pleas, the Court of Probate, and to a limited extent, in Justices of the Peace ; the three latter jurisdictions having been created by the legislature, pursuant to the above cited provision of the constitution. The Court of Sessions has no jurisdiction in cases between party and party. Thus, it appears that all the judicial power, has been distributed by the constitution and the laws, and vested in the manner before mentioned. No judicial power has been left residing in the legislature ; though in cases of impeach- ment the constitution vests such power in one branch of it, viz. the Senate.

Again by the law in force in *Massachusetts* at the time the decree of the Judge of Probate was passed, and which so contin- ued in force there, and in this State until re-enacted by our legislature, *Stat.* 1821, *ch.* 51, *sec.* 64, it is provided " that any " person aggrieved at any order, sentence, decree or denial of " any Judge of Probate in any county, may appeal therefrom to " the said Supreme Court of Probate, provided such appeal be " claimed within one month from the time of making such order, " sentence, decree or denial, and bond be given and filed in the " probate office by the appellant within ten days after such appeal " shall be claimed, and granted, for the prosecution thereof to " effect at the next Supreme Court of Probate, and for paying " all intervening costs and damages, and such costs as the said " Supreme Court of Probate shall tax against him." As has been before stated, no appeal was granted or claimed according to the above provision ; nor till since the resolve in question was passed.

We have thus collected and arranged the foregoing passages, or extracts from the resolve, and our own constitution ; and also from the statute of this State and *Massachusetts*, on the subject of appeals from decrees of Judges of Probate ; and have also stated how the judicial power of the State has been parcelled out, and

where it has been vested ; and we apprehend that by a careful consideration of these, in connection with certain fundamental principles, we may arrive at a safe and satisfactory conclusion.

The general question submitted to our decision, in this cause, seems to be divisible into three inquiries ; viz.

1. What is the nature of the power exercised by the legislature in passing said resolve : is it of a legislative or judicial character ?

2. If of a legislative character, is the resolve unconstitutional, or retrospective and void, on the ground that it affects, disturbs and destroys the vested rights of third persons ?

3. Is it competent for the legislature in the exercise of their legitimate authority, to suspend the operation of a general standing law, in favor of one or more individuals ; leaving it in full force as to all other persons ?

As to the *first* inquiry, we would observe as has been before intimated, that the terms used in the first section, as to three departments of government are general ; and the phraseology of the second section prohibiting the inteference of the departments, is also general. Hence as in the instance before us a question arises ;—what exercise of power by those belonging to one department, is to be considered as an invasion of the province of either of the other departments ? In reply to this it may be said at once, that if the legislature undertake to exercise judicial power, they invade the province of the judiciary ; because the constitution and the laws have placed all the judicial power in other hands. But the question returns; did the legislature exercise a judicial power in granting to the appellants the right of appeal ? In form they did not, but if it was such in substance and effect, it would clearly be a violation of the spirit if not of the very language of the constitution.

Whatever may be considered the nature and character of the decree, since the appeal was claimed, it is very clear that, at the time the legislature passed the resolve, it was in full force and virtue ; and had been for almost five years. The rights of heirs or creditors in the subject matter of that decree vested when it was passed, and so remained undisturbed until the resolve

professed to grant the appellants leave to disturb them. The ordinary and legal consequence of an appeal is, to vacate at once, the judgment or decree appealed from. Has that effect been produced in the present instance ? Or is the décree of the Judge of Probate in full force now, and the administrator liable to have a second decree passed against him by this Court on the same account ? Such a decree passed in this case by us, would not operate to relieve the administrator from the effect of the exist-ing decree, unless the resolve, and the appeal claimed in virtue of it, have completely vacated that decree ; and if it is not vacated thereby, why is it not a bar to all proceedings in this Court when relied upon as such. In fact this appeal cannot be sustained on any other principles, than that of its having produced the usual effect of an ordinary appeal ; that is, having vacated the decree below. And can the legislature, by a mere resolve, set aside a judgment or decree of a Judicial Court, and render it null and void ? This is an exercise of power common in Courts of law ; a power not questioned ; but it is one purely judicial in its nature, and its consequences. It is one of the striking and peculiar features of judicial power that it is displayed in the decision of controversies between contending parties ; the settle-ment of their rights and redress of their wrongs. But it is urged that the resolve is not liable to objection on constitutional ground; that the authority exercised by the legislature is not in any de-gree judicial ; that the resolve goes no farther than to authorize a re-examination of the cause, to empower one *judicial Court to* review the proceedings of another judicial Court by way of ap-peal, and thus to do complete and final justice to all concerned. It is true the resolve does not in terms, purport to transfer prop-erty directly from one man to another by mere legislative authority ; but it professes to grant to one party in a cause, which has been, according to existing laws, finally decided, special authority to compel the other party, *contrary to* the general law of the land, to submit his cause to another Court for trial ; the consequence of which may be the total loss of all those rights and all that property which the judgment complained of had entitled him, and those claiming through or under him, to hold and enjoy ; that is to say, it professes to accomplish in an indirect and circui-

tous manner, that which the existing laws forbid, and which by a direct and legal course cannot be attained ; and to perform an act respecting a cause between party and party ; an act therefore of a judicial character, in the simple form of legislation. Can this be correct legislation ? Can such a law be reasonable within the meaning of that term, as used in the constitution in the grant of legislative power ? We trust there is more harmony than this between the principles of morality and those of the constitution and the common law. A law is defined as " a rule of civil conduct." 1 *Bl. Com.* 44. Hence it must in its nature be general and prospective ; a rule for all, and binding on all. It is the province of the legislature to make and establish laws ; and it is the province and duty of Judges to expound and apply them.

In addition to what has been remarked under this head, it may be observed that there is no occasion for this species of particular legislative interposition. The cause of justice does not require it. If the general law which gives authority to the judicial Courts to grant reviews, in special cases, is not sufficiently comprehensive in its terms or provisions, let this discretionary jurisdiction be enlarged, so as to embrace all those cases where a new trial ought to be had ; but let all the citizens be placed on the same level, and discuss the merits of their application before those tribunals where facts can be investigated and principles uniformly applied ;—in that forum where, if a review should be granted, the cause would undergo its final investigation and decision. The genius of our government and the nature of our civil institutions are such as to render it most proper that all questions between litigating parties should be discussed and decided in a judicial Court ; there is the place to settle questions of law ; and though they have often been presented to the legislature for their determination in the form of applications for new trials, nothing but a familiarity with this mode of proceeding prevents our perceiving at once its impropriety and violation of the spirit of our constitutional provisions. The counsel for the appellants have appealed, by way of argument to this practice in *Massachusetts*. To this several answers may be given. The practice commenced under the provincial government ; and the power seems to have been exercised by the legislature at that

time on the same principles as it is by the British Parliament ;
no constitutional restraints in either case, existing to prohibit that
course of proceeding.    After the constitution of *Massachusetts*
was adopted, the practice may have been continued.    Prior to
the year 1788, the Supreme Judicial Court were not authorized
to grant reviews ; but they have been ever since, and so has this
Court since its first organization.    Before that time the power,
if it resided any where, was supposed to reside in the legislature;
and there is no proof before us that the power was denied.    It
has, no doubt, been exercised in many cases, and been followed
by acquiescence.    The legality of this jurisdiction seems not to
have been denied till in the case of *Holden v. James* 11 *Mass.* 396.
The reports do not furnish us with any other decisions on the
point.    But mere acquiescence in the exercise of this power is
no proof, under existing circumstances of its legitimacy.    If in
any of those cases where the legislature granted new trials, the
question of constitutional authority, had been subjected to the
critical examination which was had in the above case of *Holden v.
James*, the result would probably have been the same.    In this
State the question is open, and ought now to be decided on its
intrinsic merits, with all due deference to those who have estab-
lished certain constitutional boundaries, beyond which the public.
good demands that neither of the departments of government
should pass.

It has been urged that a question almost precisely similar to
this has been settled by the Supreme Court of the United States
in the case of *Calder and wife v. Bull & al. 3 Dall. 386.*    On
examination, the cases differ essentially.    At the time the legis-
lature of *Connecticut* granted the appeal in that case, their
authority was derived from the charter.    The people of the State
had formed no constitution, and the legislature of course were
not restrained by any constitutional provisions, as is the case in
this State.    Several of the Judges, in giving their opinion, relied
on this circumstance, and the usage shewing that the legislature
had long exercised this species of judicial power.    Such also was
the view of this case taken by the Supreme Court of *New-Hamp-
shire* in the case of *Merrill, adm'r v. Sherburn & al.* 1 *N. H. Rep.*
199.    The appellants therefore can derive little or no support

from decided cases.  We must settle this case on principles.

As to the *second* inquiry, we perceive that many remarks and arguments particularly applicable to it have been anticipated in our consideration of the subject of the first inquiry.  In the case of *Propr's of Ken. Purchase v. Laboree & al. 2 Greenl. 275,* we have decided that a law retrospective in its operations, acting on past transactions, and in its operation disturbing, impairing, defeating or destroying vested rights, is void, and can not and must not receive judicial sanction.  We refer to that case for the reasons on which our opinion is founded.  We have intimated in what manner the resolve is objectionable on this account.  The decree of the Judge of Probate had settled all questions in relation to the account of the administrator which was the subject of the decree; and as no appeal was legally claimed, by the law of the land the door of investigation was completely closed; so that the account was not examinable in any form, by any judicial tribunal.  Such a decree is a legal title to all claiming under it, or beneficially interested in it.  If for instance by that decree the administrator stood charged with a balance in his hands of five thousand dollars, the disturbance of such decree would necessarily endanger and perhaps destroy the vested rights of heirs or creditors, in that sum.  If by such a legislative act as the resolve in question, an existing absolute decree or judgment could be vacated, and persons interested therein be deprived of their rights in this summary manner, what security does the citizen enjoy in virtue of the section of the declaration of rights before cited, viz.  " Every person for an injury done him " in his person, reputation, property or immunities, shall have " remedy by due course of law?"  But, for the reasons before assigned, we need not enlarge on this head of the cause; and therefore proceed to the consideration of the *third* inquiry.

All public laws, from their very nature and effects, are to be considered as rules for future cases, prescribed for the benefit and regulation of the whole community.  Laws of this description are considered as the guardians of the life, safety and rights of each individual in society.  In these, each man has an interest, while they remain in force, and on all occasions he may rightfully claim their protection; and all have an equal right to make this

claim, and enjoy this protection; because, according to the first section in our declaration of rights, " All men are born equally " free and independent; and have certain natural, inherent and " unalienable rights, among which are those of enjoying and de- " fending life and liberty, acquiring, possessing, and protecting " property, and of pursuing and obtaining safety and happiness." On principle then it can never be within the bounds of legitimate legislation, to enact a special law, or pass a resolve dispensing with the general law, in a particular case, and granting a privi- lege and indulgence to one man, by way of exemption from the operation and effect of such general law, leaving all other persons under its operation.    Such a law is neither just or reasonable in its consequences.    It is our boast that we live under a govern- ment of laws and not of men.    But this can hardly be deemed a blessing unless those laws have for their immoveable basis the great principle of constitutional equality.    Can it be supposed for a moment, that if the legislature should pass a general law, and add a section by way of *proviso*, that it never should be construed to have any operation or effect upon the persons, rights or property of *Archelaus Lewis* or *John Gordon*, such a proviso would receive the sanction or even the countenance of a Court of law ?    And how does the supposed case differ in principle from the pre- sent ?    A resolve passed after the general law, can produce only the same effect as such proviso.    In fact, neither can have any legal operation.    The case of *Holden v. James* 11 *Mass. 396*, is a direct authority on this point.    The Court there decided that the legislature have no authority, under the constitution, to suspend the operation of a general law in favor of an individual.    *Holden's* right of action against *James* as administrator, was barred by the statute of limitations, which was enacted for the protection of executors and administrators, in suits against them in these capac- ities; and the legislature on *Holden's* application, passed a resolve authorizing the Court to try and decide the cause in the same manner, and render the same judgment, as though the action had not been barred by the statute; and suspending the operation of the statute as to *Holden's* demands against the intestate.    The Court observed that they could not presume the legislature ex- pected them to render a judgment contrary to law; and as the

statute of limitations was in full force, and unrepealed, it could not be legally suspended as it regarded the plaintiff, and they accordingly nonsuited him. In the case before us, though the legislature by their resolve have not only authorized but directed this Court to sustain the appeal, and proceed and decide the cause in the same manner as though the appeal had been claimed and granted in due season; we cannot suppose they entertained any doubt as to the propriety and legality of such proceedings; or presume that it was expected or desired that we should so sustain the appeal, and decree in the cause, unless warranted by law. The practice which has prevailed in *Massachusetts* in respect to granting new trials by the legislature, has in some instances been followed in this State, though considered by those who have granted them as so sanctioned by usage, as to be a proper exercise of power; yet we are bound by our duty and our oaths to decide the question submitted on its intrinsic merits, when tested by the principles of the constitution and the law of the land. The question is important, and we have examined it carefully. The object has been to ascertain the will of the people, as expressed in that constitution; and the true limits of those powers which they have granted to the three departments of government. This will and these limits being ascertained, the path of duty is plain, and it is the interest of all, that each branch should steadily pursue it. By pursuing this path ourselves, we have arrived at the conclusion, with which we feel satisfied, that, for the reasons stated in this opinion, the resolve in question cannot be deemed constitutional and binding on this Court, or entitled to its sanction; and accordingly we dismiss the appeal.

*Appeal dismissed.*

After the foregoing opinion was delivered *Preble* J. observed that though he was not present at the argument of the cause, yet he fully concurred in the correctness of the conclusion at which his brethren had arrived; and the question decided, being an important and constitutional one, he thought it proper, on this occasion, to declare his concurrence.