THE INHABITANTS OF DURHAM, *plfs. in review,* *vs.* THE INHABITANTS OF LEWISTON.

The legislature of this State has no authority, by the constitution, to grant a review of a suit between private citizens.

UPON the record in this case it appeared that the original judgment was rendered at *November* term 1822;—that at *May* term 1824, on the petition of *Durham* a review was granted :—and that no writ of review having been sued out returnable at the next term in *November* 1824, the legislature, on the petition of the plaintiffs in review, authorized them, by a resolve passed *Feb.* 23, 1825, to sue out and prosecute the present writ of review, at the then next term of this court, which was done accordingly. The defendants pleaded in abatement that the writ of review

Durham *v.* Lewiston.

was not sued out and returnable to the next term following that at which it was granted;—to which plea there was a general demurrer.

The principal question arose upon the right of the legislature to authorize the suing out of this writ of review.

*Fessenden* and *Daveis* argued in support of the demurrer.

There are no limits to the power of the State legislature, except what are imposed by the constitution of the State, and of the United States.—Whatever authority it possesses, is transcendent.   Notwithstanding the theoretic division of powers, a practical line of demarcation is still to be settled ; and perhaps this very uncertainty is one of the excellencies of a mixed constitution, the scheme of which is to prevent any one of its principles from being carried so far as, taken singly and theoretically, it might go.   Thus, among their undisputed powers, the judiciary possesses a power of interpreting statutes, almost equivalent to simple legislation; and the legislature possesses that by which they are enabled to remedy the apparent defects of existing provisions, and to declare their sense of the existing laws.   Thus also it changes relative rights at pleasure, by setting off a citizen from one town to that adjoining him ; it remedies the defects of ministerial acts, and confirms irregular, and completes imperfect judicial proceedings.

The constitution does not attempt to define the judicial authority ; but leaves it to be ordained and distributed by the legislature, and parcelled out in such portions as it may see fit, in its general discretionary superintendence over the municipal concerns of the community.   The *residuum* of such power remains, therefore, by the necessary constitution of the State, in the legislature.   Having no court of chancery jurisdiction, the legislature does necessarily possess some chancery powers.   The authority of its acts of this class is familiar in cases affecting the estates and rights of minors, and other persons incapacitated by law ; in respect to which the State legislature may be said to contain the elements of chancery jurisdiction.   And these powers extend to granting relief in all cases of accident, mistake, and hardship.

This case is clearly distinguishable from that of *Lewis v. Webb* 3 *Greenl.* 326, which was a case of appeal. Almost the whole jurisdiction of this court is appellate; and the statutes regulating appeals require them to be pursued within limited periods; after which the rights inevitably lapse, and cannot be revived consistent with the rights of the adverse party, which have become vested by the omission. Hence an act of the legislature to grant an appeal from a final legal judgment, may amount to an act to vacate such judgment. Reviews, however, stand on a different footing. Besides the inherent power of this court to grant new trials at common law, it has a general power to sustain applications for reviews, if presented within three years from the rendition of judgment. During this period the case is so within the power of the court to grant a review, and so under the control of the party who may apply for it, that the party obtaining the judgment can, in no sense, be considered to have acquired a vested right under it, which it would be illegal and unauthorized to disturb.

The statute does not require that the review should be prosecuted at the term next after it is granted. This restriction is only imposed by a construction, in the case of *Hobart v. Tilton* 1 *Greenl.* 399, of a statute of Massachusetts, different, in its provisions, from ours, which imposes no positive limitation in point of time. And our statute, having been enacted since that decision, may be considered as taking away the effect of the voluntary limitation thereby constructively imposed upon the power of the judiciary.

But the case is, at least, within the discretionary power of the court. It is a judicial writ, upon which the court may impose the condition that it shall be entered at the next term ; and may relieve against its own restriction. The legislature, in the general law, and in the resolve passed touching this case, has industriously expressed its opinion of the merit of such applications ; and has, by implication, removed the barrier imposed in *Hobart v. Tilton,* and the court, in the case of *Clap v. Joslyn* 1 *Mass.* 129, has indicated the course to be pursued in similar cases, to administer substantial justice, and relieve parties from the effects of extraordinary accident or mistake.

*Adams,* for the defendants, relied upon the objection that the resolve authorizing the prosecution of this suit was unconstitutional, and void ; it being an exercise of judicial power, and therefore against *Art. 3, sec. 2,* of the constitution ; and it being also a violation of rights already vested, as it went to suspend the operation of a general law, in favor of a particular case. To this point he cited *Const. Maine, art. 1, sec.* 11, 13. *Holden v. James* 11 *Mass.* 396. *Merrill v. Sherburne* 1 *N. Hamp. Rep.* 199. *Lewis v. Webb* 3 *Greenl.* 326. And he contended that the case of *Hobart v. Tilton* 1 *Greenl.* 399, was not affected by any subsequent legislation ; and that at the time of passing the resolve, the law requiring every writ of review to be entered at the next term after it was granted, was in full force, and obligatory on these parties as well as all other citizens.

This cause having been argued at the adjourned session in *April* last, the opinion of the court was now delivered by

MELLEN C. J. On the facts appearing on the record in this cause, the question is whether the writ shall be sustained, or the plea adjudged good. The cause has been ably argued on both sides. One object of the plaintiff's counsel has been to distin‑ guish this case from that of *Lewis & al. v. Webb* 3 *Greenl.* 326, in respect to the constitutional authority of the legislature to pass the resolve in question and give it its intended operation. The soundness of that decision is not questioned ; but as the two cases in some respects were different, we have attentively listened to the arguments, that we might become satisfied whether there is any difference of such a character as to leave the present case unaffected by that decision ; and after mature consideration, we are all satisfied there is no such distinction. We therefore lay the resolve out of the case, and proceed to examine the other grounds on which it is contended that the writ may be maintained. And here, in the first place, it is contended, that upon a fair view of the decision of this court in *Hobart v. Tilton* 1 *Greenl.* 399, the writ in this case was entered in season, it being at the second term after the review was granted. That case presents two principles. There the writ was entered at the second term

after the review was granted, and a plea in abatement was filed; the court decided that the plea was good and abated the writ. Thus far that case is directly in point, and we are by no means dis- posed to disturb it. But as the court had then been recently organ- ized, they considered it proper, after having decided that the plea was good, to lay down the principle of the decision, with one limi- tation, in respect to future cases ; which was that in certain cases the court might, by a special order, passed at the time of granting the review, authorize the prosecution of the writ of review at the second term, when reasons existed, rendering such order necessa- ry or proper. In the case before us no such order was passed or requested. After this decision, the law upon the subject was con- sidered as settled, and the practice was conformed to it. The leg- islature has so considered it ; and by the act of 1826, ch. 347 has enlarged the principle, and declared that a writ of review, in cer- tain cases may be entered and prosecuted at the second term. We feel bound by our decision and this legislative recognition of its force and effect. In the case of *Hobart v. Tilton*, after abating the writ for its irregularity, we received a new petition and granted a review, in the same manner as the Supreme Judicial Court of Massachusetts had done before ; so in this case, after the failure to enter and prosecute the writ of review at the first term, another application might have been made for a review ; as at that time the three years allowed by law for granting a review had not elapsed ; but no such application was made, and the reasons which have in argument been assigned in excuse for not suing out the writ of review and causing it to be served and entered in season, do not apply to the omission to renew the peti- tion for review within the legal term. It is said that a doubt existed in the minds of counsel as to the power of the court to grant a review a second time, when a failure to sue out the writ had occurred ; but we did grant a second review in *Hobart v. Tilton*, under our statute. We cannot on this account bend a principle of law ; nor can it be justice to the town of *Lewiston* for us so to do, even if it could be done consistently with settled principles. But it is in the last place contended that the writ may be sustained upon the principles adopted by the court, in the

case of *Clap v. Joslyn* 1 *Mass.* 129. We cannot consider that case as an authority or entitled to very great consideration. *Clap* applied for a review; and it seems the court granted it without notice to *Joslyn*; and when a writ of review was sued out and served, the defendant appeared and obtained a rule on the plaintiff to shew cause why it should not be quashed for want of notice; the court, perceiving the dilemma in which the parties were placed by their premature decision, quashed the writ of review, though they protested that they were not obliged to quash it; they even said that the writ of review might be considered as an order of notice; and yet they did not so consider it. It is difficult to see how such a principle could be sustained, as the statute of reviews requires a petition, hearing upon it, and a judgment of court granting a review; and then provides that after all this the petitioner shall sue out a writ of review in common form, to be served on the opposite party. We cannot adopt a course of proceeding so evidently opposed to the language and spirit of the law. Besides, experience has proved how important it is that courts of justice should observe regularity and consistency in those rules which are established for the government of matters of practice; matters of frequent occurrence, and extensive operation in their effects. Rules are easily understood, though principles are often doubtful in their application.

Upon a view of all the facts in this case and of the principles of law applicable to them, we feel ourselves bound by our former decisions; and we are unanimously of the opinion that the plea in abatement is good and sufficient in law, and that the defendants must have judgment for their costs.