OPINION
OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
. GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION

\* \* \* \* \* \*

QUESTIONS PROPOUNDED BY THE HOUSE IN AN ORDER
DATED FEBRUARY 9, 1961
ANSWERED FEBRUARY 28, 1961

HOUSE ORDER PROPOUNDING QUESTIONS

STATE OF MAINE

In House, February 8, 1961.

WHEREAS, It appears to the House of the One-Hundredth Legislature that the following are important questions of law and the occasion is a solemn one; and

WHEREAS, It is important that the Legislature be informed as to the constitutionality of the proposed bill; and

WHEREAS, The statutory law of the State is silent as to any general right of recovery for deprivation of enjoyment of property and financial loss resulting from state government action or inaction; and

WHEREAS, During and after the construction of the Bangor-Brewer Bridge and its approaches, the State Highway Department, its employees and supervised contractors allegedly, needlessly interfered with the normal use of the property of claimant by allegedly doing what it should not have done and failing to do what it should have done in the exercise of its police power, i.e., allegedly unnecessarily blockading and isolating the business property from the general public through phases of the construction itself, through parking heavy equipment when not in use on and about the property, and erecting and refusing for a con-

siderable period of time to remove erroneous and misleading traffic signs; and

WHEREAS, There is pending before the 100th Legislature H. P. 464, L. D. 664, Resolve in Favor of Jim Adams, Inc., of Bangor

ORDERED, that in accordance with Section 3 of Article VI of the Constitution of Maine the Justices of the Supreme Judicial Court are hereby respectfully requested to give the House their opinion on the following questions:

## QUESTION No. 1

Can the Legislature in the exercise of its powers and judgment of what the facts actually are, constitutionally make a monetary award to the claimant as provided in L. D. 664 if the Legislature concludes damage to the claimant has been done justifying compensation?

## QUESTION No. 2

Would payment from the General Highway Fund as provided by L. D. 664 violate Article IX of the Maine Constitution?

House of Representatives
On motion of
Mr. Hughes of St. Albans
   Read and Tabled
   Under Rule 46
   Feb. 8, 1961
   Ordered reproduced
   Tomorrow assigned
  HARVEY R. PEASE,
          Clerk
Name: Hughes
Town: St. Albans

House of Representatives
Speaker Laid Before the
House and on Motion of
Mr. Hughes of St. Albans
   Received Passage
   February 9, 1961
  HARVEY R. PEASE,
          Clerk
A True Copy
Attested
  HARVEY R. PEASE,
    Clerk of the House

## ONE-HUNDREDTH LEGISLATURE

Legislative Document                                    No. 664

H. P. 464          House of Representatives, January 24, 1961

Referred to the Committee on Claims, sent up for concurrence and ordered printed.

HARVEY R. PEASE, Clerk

Presented by Mr. Minsky of Bangor.

## STATE OF MAINE

### IN THE YEAR OF OUR LORD NINETEEN HUNDRED SIXTY-ONE

**RESOLVE, in Favor of Jim Adams, Inc. of Bangor.**

**Jim Adams, Inc.; reimbursed. Resolved:** That there be appropriated from the General Highway Fund or the Unappropriated Surplus of the General Fund the sum of $40,400 to compensate in part said Jim Adams, Inc., of Bangor for damage suffered by extreme loss of business and business interruption to a unique and unusual degree in its automobile agency and maintenance repair shop, during the construction of the Bangor-Brewer bridge, and during the altering, widening and changing of grade, and obstructing of public streets serving said Jim Adams, Inc., in connection with the bridge construction, and during the period when traffic directional signs placed in regard to said bridge were misleading and incorrectly positioned, not compensated by the State Highway Department.

### STATEMENT OF FACTS

James Adams, Inc., was, before the bridge construction the agency for Nash automobiles, in Bangor, and during the construction of the Bangor-Brewer bridge access to his place of business was hindered to an extent resulting in great loss of business.

Answers of the Justices

To the Honorable House of Representatives of the
State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on February 9, 1961.

QUESTION (1): Can the Legislature in the exercise of its powers and judgment of what the facts actually are, constitutionally make a monetary award to the claimant as provided in L. D. 664 if the Legislature concludes damage to the claimant has been done justifying compensation?

ANSWER: We respectfully decline to answer the first question submitted to us by the House of Representatives. L. D. 664 upon its face contains language which suggests that the purpose of the bill may be to provide additional damages to the claimant arising out of either the condemnation of land or the change of grade of a highway. The brief statement of facts made a part of the bill makes no reference to negligence or trespass by agents or servants of the State. On the other hand, the prefatory statement incorporated by the House in its introduction to the questions submitted to the Justices does contain a recitation of facts "allegedly" existing. Included therein are references to acts of apparent negligence and trespass. Even here, however, there is no indication that the Legislature has yet found any part or all of these "alleged" facts to be true, nor does the language used offer essential assurance that it will have done so prior to the passage of L. D. 664. Accordingly we deem the question premature for reasons which will be made to appear.

If we look only to the face of the bill as written, the answer to Question No. 1 might well be in the negative.

Reference is made therein to elements of damage for interruption or loss of business. Interruption or loss of business in condemnation proceedings is not legally compensable in the absence of statutory authorization. Nichols on Eminent Domain, 3rd Ed., Vol. 4, Sec. 13.3, Page 254.

As to all claims in L. D. 664 for damage which would be justifiable and remediable in our courts as a proximate consequence of land condemnation, alteration, widening or changing of road grade, an enactment of the bill would constitute the appropriation of judicial prerogative by the Legislature, factual findings of injury done to a corporation in its property and the application of a remedy in damages.

All the judicial power in this State has been distributed and vested by our Constitution and complementary legislative acts thereunder and none has been left residing in the Legislature save for impeachment jurisdiction. Constitution of Maine, Article I, Sec. 19, Article III, Secs. 1, 2, Article IV, Part Third, Sec. 1, Article VI and diverse revised statutes; *Lewis* v. *Webb*, 3 Me. 326; *Durham* v. *Lewiston*, 4 Me. 140.

The warrant of security within Article I, Sec. 21 of the Constitution, Revised Statutes and notably R. S., Chap. 23, Secs. 19 through 23 (P. L., 1951, Chap. 321, Sec. 2) together with established court precedents supply exhaustive jurisdiction and adequate due process of law for injuries proximately resulting from property condemnation and road grade changes.

It is not within the bounds of legitimate legislation for the Legislature to enact a special law or pass a resolve dispensing with the general law in a particular case and granting what must be deemed a privilege and indulgence to one person or corporation by way of exemption from the general law, statutory or common, leaving all other legal persons under the operation of such general law. *Milton* v. *Railway*

*Co.,* 103 Me. 218, 223, and cases cited therein; *State* v. *Flemming,* 66 Me. 142, 151.

If we look beyond the bill, however, and recognize that the Legislature may find facts pertaining to acts of trespass and negligence of agents and servants of the State from which it could properly conclude that a moral obligation was owed by the State to the claimant, then our answer might in the light of such a finding be in the affirmative.

The determination of the underlying facts is exclusively for the Legislature and its wisdom and judgment in making such findings are not to be questioned. Whether the facts found warrant the conclusion that a "moral obligation" exists is always subject to judicial review. "Such terms as 'moral obligation' and obligation 'founded on justice and equity' are flexible. They serve to formulate the problem rather than to provide the formula by which the problem may be solved. No yardstick has ever been devised which can be mechanically applied. Nonetheless, in every case there must exist an obligation which would be recognized, at least, by men with a keen sense of honor and with real desire to act fairly and equitably without compulsion of law. The Constitution does not prohibit the Legislature from doing in behalf of the state what a fine sense of justice and equity would dictate to an honorable individual. It does prohibit the Legislature from doing in behalf of the state what only a sense of gratitude or charity might impel a generous individual to do." *Ausable Chasm Co.* v. *State,* 266 N. Y. 326, 194 N. E. 843, 845. "The concept of liability based upon moral obligation is, except in the case of governmental liability, foreign to our law. It is not strange that such a doctrine should be accepted in the relations between the state and the individual. An individual is free to make a gift and also to recognize moral obligations, although it is axiomatic that he cannot be compelled to do so. But the state, because of the limitations of the public purpose doc-

trine, cannot make a gift. Thus the doctrine of moral obligation places the state on the same footing, in this respect, as the individual. It cannot be compelled to do so, but it is free, through appropriate legislation to satisfy that which it recognizes as its moral debt." *Koike* v. *Board of Water Supply,* 352 P. (2nd) (Hawaii) 835, 839. It has been almost universally held that public funds may be disbursed to satisfy a "moral obligation" and in each such case "some direct benefit was received by the state as a state or some direct injury suffered by the claimant under circumstances where in fairness the state might be asked to respond — where something more than a mere gratuity was involved." *People* v. *Westchester County Nat. Bank,* 231 N. Y. 465, 132 N. E. 241, 245; *Fairfield* v. *Huntington,* 23 Ariz. 528, 205 P. 814, 817; Anno. 172 A. L. R. 1408; 42 Am. Jur. 763, Public Funds, Sec. 62; 81 C. J. S. 1150, States, Sec. 133.

As noted above, however, when the general law provides an adequate remedy available to all claimants similarly circumstanced, and provides the nature and limits of damages recoverable therefor, additional compensation cannot be made available to individual claimants under the guise of discharging a "moral obligation." It is just for this reason that it must be ascertainable, preferably but not necessarily from the bill itself, that supporting facts found by the Legislature warrant legislative determination that a "moral obligation" exists.

QUESTION (2): Would payment from the General Highway Fund as provided by L. D. 664 violate Article IX of the Maine Constitution?

ANSWER: We answer in the affirmative.

Payment to the corporation named as proposed by L. D. 664 could, if at all, be justified under Constitution of Maine, Article IX, Sec. 19, only as a debt or liability incurred in construction or reconstruction of a bridge. L. D. 664 con-

templates a grant by the Legislature and not such a debt or liability.

Dated at Augusta, Maine, this 28th day of February, 1961.

Respectfully submitted,

ROBERT B. WILLIAMSON
DONALD W. WEBBER
WALTER M. TAPLEY, JR.
FRANCIS W. SULLIVAN
F. HAROLD DUBORD
CECIL J. SIDDALL