LOUIS NADEAU
*vs.*
STATE OF MAINE

York. Opinion, May 29, 1963.

*Donald P. Allen,* for Plaintiff.

*John W. Benoit, Asst. Atty. Gen'l,* for State.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

MARDEN, J.    On appeal from the dismissal of a writ of error *coram nobis,* and affirmation of judgment for the State.

The petitioner-appellant Louis Nadeau was convicted of the crime of murder at the January 1950 Term of the York County Superior Court and was sentenced to mandatory imprisonment for life.    By an undated document which was subscribed and sworn to on March 19, 1962 he applied for a writ of error *coram nobis* alleging a denial of his constitutional right to a fair and impartial trial and the benefit of "due process of law"; that a confession was obtained from him by force; that because of his fear of police violence he did not reveal this alleged coercion to his attorney at the time of trial; that through the same fear of violence he was prevented from testifying in his own defense; that "the lawyers he has hired have only taken the few dollars your petitioner has been able to obtain and done nothing"; and that previous attempts through post conviction processes to obtain justice had been unsuccessful "because your petitioner does not understand law or how to draw a proper petition."    This petition was filed with the Superior Court in York County and the State seasonably answered and moved to dismiss as to those issues which had been decided at the trial on the homicide charge, and on subsequent post conviction proceedings.    Constitutional issues remained which had not been previously considered.    At some time during the period between the filing of the petition and the September 1962 Term of the Superior Court for York

County, counsel for the petitioner entered an appearance. The date of this entry does not appear in the record.

By letter dated September 12, 1962 to the Chief Justice of this court purporting[1] to be written by the petitioner, he complains of having had no hearing on his petition and continues "I have an attorney but he is not representing me in this action, and has indicated he does not want to. This action was filed pro se and that is the way it remains to this date, I would appreciate that a date certain be set for hearing in this matter." This letter was forwarded by the Chief Justice to the presiding justice at the September 1962 Term of the Superior Court for York County then in session and the office of the Attorney General in cooperation with the petitioner and the court prepared a writ of error *coram nobis* and the necessary order of notice thereon dated October 12, 1962 returnable on October 15, 1962, within the September Term.

There was other correspondence purportedly signed by Mr. Nadeau to the presiding justice of the Superior Court at York County, the very proper purpose of which was to obtain an assignment for hearing on his petition.

Counsel, who, at some time after the filing of Mr. Nadeau's petition, had entered an appearance for Mr. Nadeau, wrote the Clerk of Courts of York County under date of November 2, 1962 that his appearance was withdrawn prior to the September 1962 Term and that the presiding justice and Attorney General's office were so advised.

Mr. Nadeau appeared before the court on October 15, 1962 for himself and from the extracts transcribed from that hearing we have the following colloquy:

---

[1] The word "purporting" is used for it later developed that Mr. Nadeau was illiterate, could not read and could write only his name. At the hearing later discussed a sample of Mr. Nadeau's signature was taken and made a part of the record, from which we conclude, that the original petition for the writ of error, some of the correspondence referred to, and his motion to proceed as a pauper were in fact signed by him.

"THE COURT: You don't have an attorney.

"THE PETITIONER: No. That is right.

"THE COURT: And you indicated to me in your letter that you did not wish the services of an attorney and you were going to present your own case, so I will explain to you how you can do that, Mr. Nadeau. * * * ."

Hearing was held on the merits of the writ of error resulting in a decree of October 18, 1962 ordering a dismissal of the writ and affirming judgment for the State.

By letter dated October 21, 1962 purportedly written by Mr. Nadeau an appeal from this dismissal was claimed. By paper undated, but subscribed and sworn to on October 22, 1962, petitioner filed a motion to proceed *"in forma pauperis"* on his appeal; that a record of the hearing on the writ of error be furnished him without costs; and that counsel be appointed to prosecute the appeal, to which motion was attached an affidavit of indigence. By decree of the Superior Court dated October 29, 1962 the presiding justice determined that the petitioner was indigent, that the appeal was filed in good faith, and appointed counsel to represent him.

Contents of the record on appeal were designated and from the nine points raised on the appeal, error on the part of the presiding justice is claimed because no counsel was appointed for the petitioner for his hearing on the writ of error in the light of petitioner's illiteracy and the court's alleged failure to determine petitioner's competence to waive his right to court appointed counsel and to represent himself.

While the presentation of the case to this court was briefed on constitutional issues we do not find that constitutional questions are reached.

At no stage in the proceeding prior to the appeal which brings the case to us was any representation made by the petitioner-appellant that he was financially unable to employ counsel.

> "That the petitioner is a pauper within the intent of *in forma pauperis* proceedings is plainly a preliminary and indispensable fact. Without such a finding there is no reason to consider in this or any other type of proceeding whether counsel or other assistance should be supplied by the State without expense to the petitioner." *Brown, Petr.* v. *State,* 153 Me. 512, 513; 138 A. (2nd) 462.

During a portion of the period during which his petition was pending he had counsel of record and when it was determined by the presiding justice that that counsel was no longer prosecuting Mr. Nadeau's petition, the presiding justice was entirely justified in accepting the petitioner's letter of September 12, 1962 that "This action was filed pro se and that is the way it remains to this date." At no time prior to this appeal did Mr. Nadeau ask for the appointment of counsel and assuming that we now conclude that he was in fact illiterate, that fact so assumed does not ipso facto establish such limited mental competence as to require a finding that he had no ability to elect to proceed on his own. From the record he did so elect. See *Pike, Petr.* v. *State,* 152 Me. 78, 82; 123 A. (2nd) 774.

Because of the absence of the "preliminary and indispensable fact" of indigence the presiding justice would have had no occasion to consider appointment of counsel.

We reach no constitutional questions.

A point not raised in the petitioner's application for writ of error but arising out of the hearing requires comment. According to the decree of the Superior Court to which appeal was taken, — the abstracted record being silent on this point, petitioner testified that following his arrest and dur-

ing his interrogation the County Attorney was present and "gave him to understand" that he, the County Attorney, was acting as petitioner's attorney, and that the County Attorney made certain representations to the petitioner which, it is implied, encouraged or prompted the petitioner to make the confession, which was later used against him. In this connection and as supporting proof that the County Attorney was present at the time and place the petitioner alleges, the petitioner questioned the County Attorney as to a certain telephone call which the County Attorney made from the room or within earshot of the room in which Mr. Nadeau was being questioned. We infer, again from the decree, that the County Attorney's reply to this was not responsive, and the question was not pressed.

The day following the hearing, — still interpreting the decree, the County Attorney appeared before the presiding justice and stated that "he had since realized that the petitioner had apparently overlooked the fact that he hadn't learned whether" the County Attorney had in fact made such a telephone call and he, the County Attorney, felt that in fairness to the petitioner he should inform the court that although he had no recollection of making such a call it was very likely that he may have done so. The presiding justice declared in his decree that the evidence adduced before him failed to establish any misrepresentation to the petitioner relative to the position occupied by the County Attorney, that the petitioner never at any time claimed that he was in any way harmed by any misunderstanding as to the County Attorney's position unless it may have affected his confession, the validity of which confession was adjudicated at the trial on the principal charge and that the statement by the County Attorney on the day following the hearing had no significance inasmuch as the County Attorney admittedly was present during a portion of the time and at the place of petitioner's interrogation.

If the subject of the post-hearing ex parte statement possibly could have prejudiced the rights of Mr. Nadeau, he would be entitled to a new hearing. The obvious purpose of the inconclusive questioning was to support an admitted fact, and as such was of no legal significance.

*Appeal denied.*