Louis NADEAU

v.

STATE of Maine.

Supreme Judicial Court of Maine.

Dec. 1, 1978.

Seymour Nathanson, Portland, Andrews B. Campbell (orally), Portland, for plaintiff.

John W. Benoit (orally), Deputy Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Pursuant to a Private Resolve, 1969 Me. Acts, ch. 32,[1] Louis Nadeau (Nadeau), the plaintiff, instituted suit against the State of Maine before a three-justice panel of the Superior Court. Finding that Nadeau's complaint did not state a cause of action, the panel converted the State's motion to dismiss pursuant to M.R.Civ.P. 12(b)(6) into an order granting summary judgment to the State. We conclude that the panel erred in granting summary judgment but that such error was essentially harmless because it should have granted the State's motion to dismiss.

As a backdrop for considering whether the plaintiff has stated a cause of action, some elaboration on the underlying facts is in order. Although Nadeau's complaint offers little direct assistance, we have made reference to a legislative "Statement of Facts" accompanying the Resolve but not enacted by the Legislature which the plaintiff apparently attempted to incorporate into his complaint. Further guidance is provided by our prior decisions in *Nadeau v. State,* Me., 247 A.2d 113 (1968); *Nadeau v. State,* Me., 232 A.2d 82 (1967); *Nadeau v. State,* 159 Me. 260, 191 A.2d 261 (1963).

Accused of murder, Nadeau signed a confession at the Biddeford Police Department admitting to the crime. At the subsequent probable cause hearing in the Municipal Court, Biddeford, Maine, held in October of 1949, Nadeau entered a plea of guilty without the benefit of counsel. Because of an alleged inability to speak or write English fluently, Nadeau avers that he knew neither that he was signing a murder confession nor that he was entering a guilty plea to the charged crime. Following indictment, Nadeau pled not guilty. At trial in the Superior Court, the judge who presided at the probable cause hearing testified that Nadeau had previously entered a guilty plea. Convicted of murder, Nadeau was sentenced to life imprisonment.

In 1963, the United States Supreme Court decided in *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), that the right to counsel attached at a probable cause hearing because it was a critical stage in the proceedings against the accused. In 1968, *White v. Maryland* was given retroactive application, *Arsenault v.*

---

1. Chapter 32 of 1969 Me.Acts states:

 RESOLVE, Authorizing Louis Nadeau to Bring Civil Action Against the State of Maine.

 Louis Nadeau; authorized to sue the State of Maine. Resolved: That Louis Nadeau formerly of Biddeford in the County of York, who suffered damage for violation of his constitutional rights is authorized to bring an action in the Superior Court for the County of York, within one year from the effective date of this resolve, at any term thereof against the State of Maine for damages, if any, and the complaint issuing out of said Superior Court under the authority of this resolve shall be served on the Secretary of State by attested copy 30 days before a term of said court by the sheriff or either of his deputies in any county of the State of Maine; and the conduct of said action shall be according to the practice of actions and proceedings between parties in said Superior Court, and the liabilities of the parties and elements of damage, if any, shall be the same as the liabilities and elements of damage between individuals; and the Attorney General is authorized and designated to appear, answer and defend said action. Any judgment that may be recovered in said civil action shall be payable from the State Treasury on final process issued by said Superior Court or, if appealed, the Supreme Judicial Court, and costs may be taxed for the said Louis Nadeau if he recovers in said action. Hearing thereon shall be before 3 justices, without a jury; said justices to be assigned by the Chief Justice of the Supreme Judicial Court.

*Massachusetts,* 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968). Our Court, upon the State's motion for rehearing,[2] concluded that Nadeau's conviction could not stand in light of the controlling principles of *White* and *Arsenault. Nadeau v. State,* Me., 247 A.2d 113 (1968). Stipulating that it would not retry him, the State released Nadeau.

In 1969, a Private Resolve was introduced in the Legislature which sought to appropriate to Nadeau $83,000 "as a full and final settlement against the State for violation of his constitutional rights." Referred to the Judiciary Committee, the present bill emerged and was enacted by the Legislature. The Resolve authorized Nadeau to sue the State while deleting all references to a direct appropriation.

### I.

In arguing that his complaint alleges a cause of action, Nadeau proceeds upon the theory that the Resolve creates a new action based on unjust conviction and imprisonment. The State responds that the plaintiff's interpretation of the Resolve renders the bill unconstitutional under art. I, § 6–A (equal protection clause) and art. IV, pt. 3, § 13 (special legislation clause) of the Maine Constitution.

■ We need not here decide whether consistent with the above-mentioned constitutional principles the State could create a cause of action for Nadeau alone because the Legislature clearly intended no such result. The Resolve's sole purpose was to waive sovereign immunity and to permit the plaintiff to proceed on any cause of action cognizable in this jurisdiction. The Resolve unambiguously states:

> Nadeau . . . is authorized to bring an action . . . against the State of Maine for damages, if any, . . . and the liabilities of the parties and elements of damage, if any, shall be the same as the liabilities and elements of damage between individuals . . . .

Although the Resolve is not unconstitutional for creating a new cause of action, we deem it necessary to consider the jurisdictional question of whether the Resolve's waiver of sovereign immunity violates either the special legislation or equal protection clauses of our Constitution. If the instant Resolve transgresses either of the constitutional provisions, the plaintiff's suit would be null and void depriving the trial court and this Court of jurisdiction. *Look v. State,* Me., 267 A.2d 907 (1970). As such, the question may be appropriately raised on our own initiative. *Id.*

■ At the outset, we recognize that private bills which either directly appropriate money or authorize suits against the State serve a significant ameliorative function since sovereign immunity was an absolute bar to a suit against the State prior to our decision in *Davies v. City of Bath,* Me., 364 A.2d 1269 (1976). Moreover, all legislative acts are clothed with an armor of constitutionality particularly resilient where such acts follow a long-settled and well-established practice of the Legislature. *State v. Longley,* 119 Me. 535, 112 A. 260 (1921). It is equally true that although we have had the opportunity, we have not heretofore inquired into the constitutionality of such legislation. *Drake v. Smith,* Me., 390 A.2d 541 (1978); *Turner v. Collins,* Me., 368 A.2d 1160 (1977); *Hilton v. State,* Me., 348 A.2d 242 (1975); *Kerr v. State,* 127 Me. 142, 142 A. 197 (1928); *Austin W. Jones Co. v. State,* 122 Me. 214, 119 A. 577 (1923); *Marshall v. State,* 105 Me. 103, 72 A. 873 (1909).

■ Nevertheless, where some individuals are appropriated money or permitted to sue the State while others are not, the equal protection clause of the Maine Constitution is necessarily implicated. Art. I, § 6–A states:

> No person shall be deprived of life, liberty or property without due process of law, *nor be denied the equal protection of the laws* . . . . (emphasis supplied).

---

**2.** Promptly following the 1968 decision in *Arsenault v. Massachusetts, supra,* the State moved for a rehearing and reconsideration of *Nadeau v. State,* Me., 232 A.2d 82 (1967), in which we decided that *White v. Maryland, supra,* was to be applied prospectively.

Moreover, the vehicle by which the Legislature authorizes payment or suit is a private bill, thereby activating the special legislation clause, art. IV, pt. 3, § 13, which provides:

> The Legislature shall, from time to time, provide, as far as practicable, by general laws, for all matters usually appertaining to special or private legislation.

Both constitutional provisions have been used to invalidate private resolves attempting to grant a privilege to an individual or individuals not enjoyed by other similarly situated persons. Concerning the equal protection clause, the Court, speaking through Mr. Chief Justice Mellen [3] in the early leading case of *Lewis v. Webb*, 3 Me. 326, 336 (1825), stated:

> On principle then *it can never be within the bounds of legitimate legislation, to enact a special law, or pass a resolve dispensing with the general law, in a particular case, and granting a privilege and indulgence to one man, by way of exemption from the operation and effect of such general law, leaving all other persons under its operation.* Such a law is neither just or reasonable in its consequences. It is our boast that we live under a government of laws and not of men. But this can hardly be deemed a blessing unless those laws have for their immoveable basis the great principle of constitutional equality. (emphasis supplied).

In *Lewis v. Webb, supra,* the Court voided a private resolve which attempted to dispense in a particular instance with the general procedures governing appeals from decrees of probate court judges. On similar grounds, the Court one year later in *Durham v. Lewiston,* 4 Me. 140 (1826), invalidated a private resolve which granted to a particular party an appellate review not enjoyed by others. Relying on *Lewis* and *Durham, Milton v. Bangor Railway & Electric Co.,* 103 Me. 218, 68 A. 826 (1907), struck down a private act which limited an injured party's right to sue a specific rail-road by granting to that corporation an exemption from the general requirements of the common law.

■ Turning to the special legislation clause, although it may appear at first blush to be *directory,* merely advising the Legislature on how it ought to draft legislation, we have consistently viewed it as *mandatory.* As such, if a general law is practicable, viz., where general legislation has been enacted or could have been made applicable, passage of special legislation violates art. IV, pt. 3, § 13. Thus, in *Opinion of the Justices,* 157 Me. 104, 170 A.2d 647 (1961), the Court effectively relied upon the special legislation clause in indicating that a proposed private bill which sought to compensate a corporation for loss of business during construction of a bridge would be unconstitutional if it merely sought to provide additional damages to that already available under the general law. Resting its decision on the special legislation clause and the State and Federal equal protection guarantees, *Maine Pharmaceutical Association v. Board of Commissioners,* Me., 245 A.2d 271 (1968), the Court voided a private bill giving a named individual special permission to sit for a pharmacy examination when he was not qualified to do so under the controlling statutory provisions. Similarly, in *Look v. State, supra,* we voided a private resolve on equal protection and special legislation grounds where the Legislature attempted to exempt certain property owners from the statutory six-month period for bringing suit to recover damages resulting from changing the grade of State highways.

These cases reveal a judicial vigilance, dating back to the first days of statehood and continuing to the present, against ad hoc legislative attempts to single out certain named individuals for benefits not available to the general citizenry. This favoritism and arbitrariness, to which we have always been acutely sensitive, is equally present in a system where the Legislature determines who is to be compensated

---

**3.** For an informative biography of our first Chief Justice, see Ballou, *Prentiss Mellen,* *Maine's First Chief Justice: A Legal Biography,* 28 Me.L.Rev. 315 (1977).

or permitted to sue the State. *See Tort Liability of the State: A Proposal for Maine,* 16 Me.L.Rev. 209, 210–12 (1964). We can perceive no dispositive distinction between these two situations. Although there may be a semantic difference between a legislative enactment which directly bestows a privilege upon an individual and one which merely removes a bar to any action which would have otherwise existed, the underlying reality is the same. In both instances, there has been a legislative dispensation from the general requirements of the law with the distinct possibility of different legislative treatment for two individuals who are in all material respects identical. Such is not permitted by the constitutional guarantee of equal protection of the laws or by the special legislation clause.

■ Of course, a law uniform in operation is not rendered invalid merely because of the limited number of persons who will be affected by it. Where there has been a reasonable classification of the objects of the law, generally there are no equal protection problems, even if the law does not operate equally on all individuals and places alike. Universality is immaterial as long as those affected are reasonably different from those excluded and there is a rational basis for treating them in a different manner. *Portland Pipeline Corp. v. Environmental Improvement Commission,* Me., 307 A.2d 1, *appeal dismissed,* 414 U.S. 1035, 94 S.Ct. 532, 38 L.Ed.2d 326 (1973); *von Tiling v. City of Portland,* Me., 268 A.2d 888 (1970); *State v. King,* 135 Me. 5, 188 A. 775 (1936). *Verreault v. City of Lewiston,* 150 Me. 67, 104 A.2d 538 (1954), for instance, presented the not dissimilar question of the permissible limitations on a waiver of municipal tort immunity. In *Verreault,* the Court found no equal protection violation in a statute which permitted suit against a municipality only where injuries resulted from defects in a sidewalk. In denying the possibility of recovery where the sidewalk injury was caused by ice and snow, the Court stated:

[A]t common law there was no right of action against a town or city for injuries

caused by defects in highways. The State in granting a right of recovery for defects in highways can make the right granted as broad or as narrow as it sees fit. It can restrict its grant of such right of recovery with respect to the nature of the defects, the portion of the highway in which the defects may be found for which liability is granted, or the class of travellers to which the right of recovery is given. The only limitation thereon is that the limitation must not be arbitrary and that there must be equality of right to all persons similarly situated. *Id.* at 74, 104 A.2d at 542.

■ Similarly, special legislation is not per se unconstitutional. Where the objects of a law cannot readily be attained by general legislation, special legislation may be enacted. In *Austin W. Jones Co. v. State, supra,* the State waived sovereign immunity where a unique factual pattern was presented. In *Jones,* a corporation was permitted to sue the State as a result of arson to its property perpetrated by a mental patient from a State hospital released by a physician in the State's employ who knew that the patient was still insane. In other cases presenting unusual circumstances, special acts permitting suit against the State have been upheld. *See Tolisano v. State,* 19 Conn.Supp. 266, 111 A.2d 562 (1954) (illegally incarcerated prisoner permitted to sue State).

Where, however, the facts are not unusual, as where an individual traveling on a highway is injured due to a state's carelessness, courts have consistently struck down special acts waiving sovereign immunity since there is no rational basis for distinguishing between that individual and all others similarly situated. *Tough v. Ives,* 162 Conn. 274, 294 A.2d 67 (1972); *Cox v. State,* 134 Neb. 751, 279 N.W. 482 (1938); *Lucero v. New Mexico State Highway Department,* 55 N.M. 157, 228 P.2d 945 (1951); *Jack v. State,* 183 Okla. 375, 82 P.2d 1033 (1937); *Collins v. Commonwealth,* 262 Pa. 572, 106 A. 229 (1919); *Sirrine v. State,* 132 S.C. 241, 128 S.E. 172 (1925). In such circumstances, a general law could have been

made applicable. As was stated in *Cox v. State, supra* at 758, 279 N.W. at 486–87,

> [i]n the instant case, the legislature created a liability in favor of this plaintiff for the tort of the state's agents and servants, resulting in an injury to her while she was traveling a highway under the control of the state. Legislative Bill No. 20, in substance and form, grants to this plaintiff a right as against all other persons using the highways of the state who are similarly situated. We believe that such act does not operate equally and uniformly on all members of the class brought within its operation. While a special privilege is granted to this plaintiff, the right is denied to others similarly situated to recover for the torts of the agents and servants of the state. To uphold this legislation would require individuals, similarly situated, to knock at the door of the legislature and ask that an exception be made in their particular cases, while others, less fortunate, may not be able to obtain the relief sought. If any basis for the classification can be said to exist, it must be found in the peculiar facts and circumstances of the injuries sustained by this plaintiff. Legislative Bill No. 20 discloses nothing unique or peculiar in the circumstances of the alleged injury which would serve to distinguish it, either in a legal or moral sense, from any other wrongful act or commission of the agents or servants of the state. The act provides a special exemption in favor of this plaintiff—the right to recover for damages—which it denies to all other persons similarly situated.

█ Where, as here, materially unique facts and circumstances prompt a legislative waiver of sovereign immunity, it is highly improbable that there are other similarly situated individuals being denied the privilege granted to Nadeau. Moreover, short of a statutory provision waiving sovereign immunity for all allegedly tortious conduct attributable to the State's agents, it is doubtful whether general legislation could have been enacted to cover the unique facts presented by this case. As such, the

potential for "privilege, favoritism, and monopoly" inherent in special legislation, *Opinion of the Justices,* 146 Me. 316, 322, 80 A.2d 866, 868 (1951), while not being eliminated, is reduced to a constitutionally tolerable level.

We find no violation of either the equal protection or special legislation clauses.

## II.

█ As with a private bill directly appropriating money to an individual, special legislation permitting suit against the State must be based on a legislative assessment that the State owes a moral obligation to the particular person. *Opinion of the Justices,* 157 Me. 104, 170 A.2d 647 (1961). The State is not free to authorize payment, or a suit which could result in a judgment, without some sort of public benefit. Such a legislative conclusion may be challenged in the courts. *Id.* Here, however, since it is not alleged that the Legislature could not have properly concluded that a moral obligation was owed to the plaintiff, we will assume that the circumstances set forth in the Resolve and the accompanying "Statement of Facts" could serve as a necessary predicate for such an assessment.

## III.

We next turn to a discussion of the procedural aspects of the instant case. The Court quashed service of process on Nadeau's first complaint. Thereupon, he reserved a duplicate original complaint on April 27, 1972. The State's answer of May 8, 1972 included a motion to dismiss for failure to state a claim, M.R.Civ.P. 12(b)(6). On June 19, 1974, a pre-trial conference was held and a pre-trial order entered. At the pre-trial conference, the State submitted a memorandum in support of its 12(b)(6) motion. The following day, the record indicates that Nadeau filed "Factual Data on Plaintiff's Background as per Stipulation No. 2 of Pre-Trial Conference." This "factual data" has not been made a part of the record. Finally, on June 25, 1974, the Court treated the State's 12(b)(6) motion as a mo-

tion pursuant to M.R.Civ.P. 56 and granted summary judgment to the State.

Although the quashed original complaint was included in the record, Nadeau omitted from the record the April 27, 1972 complaint. Neither was defendant's May 8, 1972 answer included in the record. Both parties have, however, appended the answer to their briefs. Technically then, we do not have before us the pleadings which led to summary judgment because they were not properly a part of the record.

 We have recently remarked that "[w]hen an inadequate record is presented to the Law Court to support an appeal, such appeal must fail." *Berry v. Berry*, Me., 388 A.2d 108, 109 (1978). In *Berry*, we denied an appeal where the appellant was contesting the granting of a motion to dismiss and did not include the motion in the record. The rationale behind the rule is that review of a trial court decision is impossible where the pertinent documents leading to that ruling are not before us. *Construction Products Co. v. W. D. Matthews Machinery Co.*, Me., 388 A.2d 916 (1978); *State v. Bellanceau*, Me., 367 A.2d 1034 (1977).

Both parties concede that the complaint and answer before the Law Court are in effect the same pleadings that were before the panel when it granted summary judgment. Although we expressly disapprove of plaintiff's negligence in the preparation of the record, we will consider the appeal because the appropriate documentation is before us, albeit improperly.

M.R.Civ.P. 12(b) provides as pertinent to this appeal:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportu-

nity to present all material made pertinent to such a motion by Rule 56.

As a threshold question we must determine whether the three-justice panel had before it "matters outside the pleading" sufficient to convert a 12(b)(6) motion into one for summary judgment.

 In addition to the pleadings, the State submitted a legal memorandum in support of its motion to dismiss. Under *Westman v. Armitage*, Me., 215 A.2d 919 (1966), such documentation cannot be "matters outside the pleading." Plaintiff's factual data submitted pursuant to the pre-trial order is not before us. Given plaintiff's failure to include this material in the record, we have no alternative but to assume that it would have been sufficient to trigger consideration under M.R.Civ.P. 56.[4]

 Having brought into play the requirements of M.R.Civ.P. 56, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion . . . ." The "reasonable opportunity" language was designed to prevent unfair surprise to the litigants. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975). Unless the parties knew that the 12(b)(6) motion was being considered as one for summary judgment, "reasonable opportunity" should include ten days' notice to the parties (M.R.Civ.P. 56(c)) so that they will have the opportunity to furnish the court with additional materials. *Gutierrez v. El Paso Community Action Program*, 462 F.2d 121 (5th Cir. 1972). The record provides no basis for concluding that Nadeau either knew or ever received notice that the court was contemplating summary judgment. Its grant of summary judgment five days after submission of the factual data was error. *Spickler v. Carzis*, Me., 349 A.2d 173 (1975); *Dunn v. Town of Scarborough*, Me., 329 A.2d 162 (1974).

4. If the factual data submitted pursuant to stipulation amounted to an "agreed statement of facts," then under *Mendall v. Pleasant Mt. Ski Dev., Inc.*, 159 Me. 285, 191 A.2d 633 (1963); see *Chandler v. Dubey*, Me., 325 A.2d 6 (1974), it may well have been sufficient to convert a 12(b)(6) motion into one for summary judgment.

Even though summary judgment was procedurally inappropriate, such error must be assessed in light of whether the State's underlying motion to dismiss under 12(b)(6) should have been granted. *Medina v. Rudman*, 545 F.2d 244 (1st Cir. 1976); *see Westman v. Armitage, supra.*

Before reviewing a motion to dismiss for failure to state a claim, we repeat certain rubrics of construction. Adopting the rule of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, 84–85 (1957), we have stated that such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Doane v. Pine State Volkswagen, Inc.*, Me., 377 A.2d 481, 484 (1977). Otherwise stated, if a complaint alleges either "the necessary elements of a cause of action or facts which would entitle a plaintiff to relief upon some theory," *Dom J. Moreau & Son v. Federal Pacific Electric Co.*, Me., 378 A.2d 151, 153 (1977), the complaint should not be dismissed. In reviewing the full spectrum of claims which might entitle the plaintiff to relief, we are obligated to construe the pleadings in the light most favorable to him, *Bramson v. Chester L. Jordan & Co.*, Me., 379 A.2d 730 (1977), and resolve every doubt in his behalf.

### IV.

The plaintiff seeks to ground his cause of action upon a number of alternative legal theories. We have already rejected Nadeau's principal argument that the Legislature attempted to create a special cause for Nadeau alone based upon unjust conviction and imprisonment. Because an action based upon such a theory has not hitherto existed at common law, *see* Note, *Compensation of Persons Erroneously Confined by the State*, 118 U.Pa.L.Rev. 1091 (1970), in the absence of any statutory authorization, plaintiff cannot proceed on this basis.[5]

The facts of this case reveal no basis for Nadeau claiming false imprisonment. False imprisonment involves the unlawful detention or restraint of an individual against his will, *Palmer v. Maine Central R.R. Co.*, 92 Me. 399, 42 A. 800 (1899). To be actionable, the authority upon which plaintiff is confined must be unlawful, as where a warrant is defective on its face, *Faloon v. O'Connell*, 113 Me. 30, 92 A. 932 (1915), or where an officer uses excessive force to arrest, *Bale v. Ryder*, Me., 290 A.2d 359 (1972), or unreasonably delays in bringing the arrested person before a magistrate, *Hefler v. Hunt*, 120 Me. 10, 122 A. 675 (1921). In the instant case, plaintiff's arrest and imprisonment were upon lawful process. In fact, it was the State which ensured that there was no unreasonable delay in releasing Nadeau by petitioning the Court immediately following the decision in *Arsenault v. Massachusetts, supra*, which delay might otherwise form the basis for such a tort. *Weigel v. McCloskey*, 113 Ark. 1, 166 S.W. 944 (1914). Under these facts, no action for false imprisonment will lie.

Malicious prosecution has long been recognized as an actionable tort in this jurisdiction. *Nyer v. Carter*, Me., 367 A.2d 1375, 1378 (1977). Under the instant circumstances, plaintiff would have to prove not only that criminal proceedings were instituted against him without probable cause and with malice, but also show that he received a favorable termination of the proceedings. *Saliem v. Glovsky*, 132 Me. 402, 172 A. 4 (1934); *Sabin v. Beaumont*, 118 Me. 490, 107 A. 295 (1919). The plaintiff has alleged none of these elements. Moreover, a conviction in a court having proper

---

5. At least five jurisdictions, the federal government, California, Illinois, New York, and Wisconsin, have statutory provisions compensating persons erroneously imprisoned. All the statutes appear to require proof of innocence. An individual released from incarceration on constitutional grounds does not appear to qualify as a victim of erroneous confinement, unless he also did not in fact commit the crime. *See* 118 U.Pa.L.Rev., *supra* at 1092. *See generally*, Annot., 161 A.L.R. 346 (1946). It should be noted that Nadeau nowhere asserts that he could prove his innocence; to the contrary, he urges us to dispense with such a requirement.

jurisdiction, where such conviction is not obtained by fraud, is conclusive on the issue of probable cause, even if the conviction is reversed on appeal. *Dunlap v. Glidden,* 31 Me. 435 (1850). As such, plaintiff's conviction at trial stands as an absolute bar to the institution of such an action.

 Closely related to false imprisonment and malicious prosecution is abuse of process, which is the employment of a process in a manner not contemplated by the law. It differs from malicious prosecution in that "it lies for the improper use of process after it has been issued, not for maliciously causing process to issue." *Lambert v. Breton,* 127 Me. 510, 514, 144 A. 864, 866 (1929). Elements necessary to sustain such an action include 1) a use of the process in a manner not proper in the regular conduct of the proceedings and 2) the existence of an ulterior motive. *Bourisk v. Derry Lumber Co.,* 130 Me. 376, 156 A. 382 (1931). As with the other causes of action that we have reviewed, there is no indication of any conduct remotely actionable under the instant tort.

 Nadeau's remaining argument appears to be that he has a cause of action based upon a violation of his sixth amendment right to counsel. Contrary to plaintiff's assertion, there is no possible action against the State either directly or under any theory of respondeat superior which would make it liable for such injury as did occur in the instant case.

At the time of Nadeau's arrest in 1949, we did not and had never viewed a probable cause hearing as a critical stage in the proceedings against an accused under ordinary circumstances. *Holbrook v. State,* 161 Me. 102, 208 A.2d 313 (1965). Fourteen years later, the United States Supreme Court reached the opposite conclusion in

*White v. Maryland, supra.* Notwithstanding that *White* was given retroactive application because the "denial of the right [to counsel] must almost invariably deny a fair trial," *Arsenault v. Massachusetts, supra,* at 6, 89 S.Ct. at 36, 21 L.Ed.2d at 7, neither the State nor its agents can be "charged with predicting the future course of constitutional law." *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288, 296 (1967). *Accord, O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396, 408 (1975); *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975). Accordingly, Nadeau received no injury compensable under our jurisprudential system.[6]

Because Nadeau's complaint reveals no cognizable action, it would have been proper for the three-justice panel to dismiss plaintiff's suit for failure to state a claim.

 The question now arises as to whether we should order plaintiff's suit dismissed with or without prejudice. The general rule is that if we find that the trial court was justified in granting a 12(b)(6) motion, the judgment below is on the merits and raises matter in bar. 2A J. Moore's Federal Practice § 12.09 at 2313 (2d ed. 1974). The rule is far from unbending and when justice so requires we have affirmed the dismissal of a suit yet permitted the plaintiff to file a new complaint, *Begin v. Bernard,* 160 Me. 233, 202 A.2d 547 (1964), or amend the original complaint, *Cohen v. Maine School Administrative District,* Me., 369 A.2d 624 (1977).

 Had the tribunal granted the State's 12(b)(6) motion, Nadeau would typically have been given leave to amend his complaint. Where, however, summary

---

**6.** Nadeau finds a cause of action in art. I, § 19, which states: "Every person, for an injury done him in his person, . . . . shall have remedy by due course of law." We have never viewed this constitutional provision as granting an action where one did not otherwise exist either under existing statutory or cognizable common law, *see Section 19 of the Maine Constitution: The Forgotten Mandate,* 21 Me.L.Rev. 83

(1969). *See Milton v. Bangor Ry. & Elec. Co., supra,* where the Court left open the question of whether exempting a particular corporation from the general requirements of tort law might not violate an injured individual's rights under art. I, § 19. In any event, the constitutional provision is inapplicable because Nadeau's complaint reveals that he has suffered no injury as a matter of law.

judgment has been entered, a court is ordinarily reluctant to permit the plaintiff to amend his complaint to assert a different cause of action. 2 R. Field, V. McKusick, & L. Wroth, Maine Civil Practice § 56.1 at 35 (2d ed. 1970). Thus, in the instant case, the error in granting summary judgment prejudiced the plaintiff by effectively eliminating the possibility of an amended complaint.

Nadeau nowhere concedes that he could not amend his complaint to assert a valid cause of action. We are mindful of our comment in *Nelson v. Times,* Me., 373 A.2d 1221, 1222–23 (1977):

> We would have serious doubts concerning the accuracy of the [12(b)(6)] ruling, considering the theoretical amendability of the infant plaintiff's complaint, were it not for the fact that at oral argument it was agreed by plaintiffs' counsel that the complaint could not be amended in any substantial manner to allege facts other than those recited therein.

Under the instant circumstances, the plaintiff should have the opportunity to amend his complaint, if amendable, subject to such time limitations as may be imposed by the panel.

The entry is:

Appeal sustained. Case remanded to the panel with instructions that the justices thereof 1) direct entry of an order vacating the order for summary judgment for the defendant, 2) enter judgment dismissing the complaint for failure to state a cause of action (M.R.Civ.P. 12(b)(6)), and 3) grant leave to amend under appropriate limitations.

WEATHERBEE, J., sat at argument and conference but died before this opinion was adopted.

DUFRESNE, A. R. J., sat at argument and conference as Chief Justice but retired before this opinion was adopted. He has joined the opinion as Active Retired Justice.