**Dalmazio O. SANTINI**

v.

**John A. LYONS et al.**

No. 80–305–M.P.

Supreme Court of Rhode Island.

July 8, 1982.

Hogan & Hogan, Thomas S. Hogan, Donald J. Packer, East Providence, for plaintiff.

Goldman & Biafore, Dennis H. Esposito, Providence, for Coastal Resources Management Council.

Carol E. Dinkins, Asst. Atty. Gen., Brian Cassidy, Washington, D. C., for United States as amicus curiae.

## OPINION

SHEA, Justice.

This matter is before the court on the plaintiff's petition for a writ of certiorari under G.L. 1956 (1977 Reenactment) § 42–35–16. The plaintiff, Dalmazio O. Santini (Santini), owns property on Great Island in the town of Narragansett, Rhode Island. The property, designated Lot No. 83 on the town assessor's plat R–3, abuts on Point Judith Pond. The coastal perimeter in that area is a salt marsh. Lot No. 83 encompasses approximately 74,000 square feet. The salt marsh covers about 59,500 square feet of the lot, leaving 14,500 square feet of dry land. The dry land consists of two separate parcels, denominated "parcel A" and "parcel B," respectively. Parcel A is located in roughly the northwestern corner of lot No. 83, bounded on the land side by Penguin Drive and Sandpiper Road. Parcel B sits in the northeastern corner bounded by Penguin Drive and Marine Drive.

Santini planned to construct a two-bedroom dwelling upon each parcel. He contracted with Joseph W. Frisella, a civil engineer, to design individual septic systems for each proposed dwelling. These systems were designed to prevent any pollution of the marsh and the pond. The proposed construction on parcel A further required the filling of 1,616 square feet of marsh plus the placement of a riprap barrier, a stone retaining wall, around the parcel's coastal perimeter. Although no filling of marsh was required adjacent to parcel B, the construction plans show the placement of riprap around its coastal perimeter and the leveling off of the existing land with fill.

Santini applied to the Coastal Resources Management Council (the council) on July 11, 1973, for its approval of his plans, pursuant to the council's jurisdiction over coastal areas. General Laws 1956 (1980 Reenactment) §§ 46–23–1–17. Pending a hearing on separate applications for each parcel, Santini received conditional approval on August 27, 1973, from the Rhode Island Department of Health for each dwelling's septic system. The department conditioned its approval upon the council's final decision regarding overall construction. Further, on October 3, 1973, the inspector of buildings for the town of Narragansett approved the construction plans, including the filling and riprap, also pending the council's decision.

A subcommittee of the council held a public hearing on the Santini applications on April 11, 1974. On June 7, 1974, the subcommittee recommended that the council deny the applications. The full council met on August 13, 1974, to consider the subcommittee's recommendation and to

hear further evidence. The council issued a written decision denying the applications on October 21, 1974. Santini filed his appeals in the Superior Court on November 18, 1974, pursuant to G.L. 1956 (1977 Reenactment) § 42–35–15, the Administrative Procedures Act.

By agreement of the parties, the appeals were consolidated on April 30, 1976. On July 28, 1976, the council filed a motion for a voluntary remand. It presented a supporting affidavit of expert witnesses who proposed to offer evidence that Santini's plans would result in damage to the coastal environment. On February 7, 1977, the presiding justice granted the council's motion. The remand order stipulated that further hearings were to be limited to the issue of damage to the coastal environment.

Further hearings were held first before a subcommittee of the council and then before the full council on June 2 and 16, 1977. The council issued its written decision denying Santini's applications on March 29, 1978. Santini once again appealed to the Superior Court. On May 15, 1980, a trial justice of the Superior Court affirmed the council's decision. We granted plaintiff's petition for a writ of certiorari under § 42–35–16. *Santini v. Lyons*, R.I., 425 A.2d 544 (1981). We now affirm the council's decision and quash the writ.

The plaintiff presents several issues to this court. He attacks both the constitutionality of the Coastal Resources Management Council Act, G.L. 1956 (1980 Reenactment) §§ 46–23–1–17 (the act), and also the council's factual findings. This court has already decided several of these issues and we need not review them again. *See Milar-do v. Coastal Resources Management Council*, R.I., 434 A.2d 266 (1981).[1] As was the case in *Milardo*, the remaining issues involve the power of the state to regulate Santini's use of his property under the act and the council's exercise of power in this case. *Id.* 434 A.2d at 268.

The plaintiff contends that § 46–23–6, which empowers the council to fashion resource management "policies and plans," denies him equal protection of the law under the Fourteenth Amendment to the United States Constitution and art. I, sec. 2, of the Rhode Island Constitution.[2] Santini argues that through such policies and plans the council could place a greater burden on him than upon landowners who are outside the council's jurisdiction. He argues that the purported conflict between his application and the relevant council policy or plan prevents him from beneficially using his property. Santini reasons that his continuing liability for taxes on his property makes his burden unconstitutional when compared to citizens whose properties are outside "the particular area" covered by the plan and whose beneficial use is not similarly impaired.

◼ Such an argument standing alone is an insufficient basis upon which to conclude that § 46–23–6 runs afoul of equal protection. A legislative enactment is presumed constitutional until the party challenging a statute proves the contrary beyond a reasonable doubt. *State v. Capone*, 115 R.I. 426, 432–33, 347 A.2d 615, 619 (1975). Since the act creates no suspect classification, Santini is obliged to show that the statutory scheme lacks any rational basis to distin-

---

1. Two of the relevant legal issues disposed of in *Milardo v. Coastal Resources Management Council*, R.I., 434 A.2d 266 (1981), are that the legislative delegation of power to the council is proper and that Rhode Island Health Department approvals of individual sewage systems are not binding on the council.

2. Article I, section 2, of the Rhode Island Constitution is essentially a guarantee of equal protection. *Sweetman v. Town of Cumberland*, 117 R.I. 134, 151, 364 A.2d 1277, 1288 (1976). Section 2 states:

"Laws for good of whole—Distribution of burdens of state.—All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens."

It is an ancient maxim that the section is advisory in nature and is not a constitutional restraint upon the Legislature's power. *Opinion to the Governor*, 88 R.I. 202, 206, 145 A.2d 87, 89 (1958); *In the Matter of Dorrance—Street*, 4 R.I. 230, 249 (1856).

guish between him and other property owners. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461, 101 S.Ct. 715, 722, 66 L.Ed.2d 659, 667, *reh. denied*, 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981); *Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491, 503, *reh. denied*, 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970); *Sweetman v. Town of Cumberland*, 117 R.I. 134, 151, 364 A.2d 1277, 1288 (1976).

■ Santini has failed to show that the classification of coastal areas by the act is an irrational legislative measure. The legislative findings contained in § 46–23–1 are a clear sign of the immense importance that the Legislature has attached to the coastal environment. The Legislature stated that the

> "preservation and restoration of ecological systems shall be the primary guiding principle upon which environmental alteration of coastal resources will be measured, judged, and regulated."

Mindful of the multifaceted importance and use of the coastal environment and recognizing the damage already done, the Legislature could rationally conclude that it was necessary to single out coastal areas for specific regulation. A more uniform regulation of the environment cutting across all types of land would be "less sensitive" to the specific needs of the coastal environment. *Cf. J. M. Mills, Inc. v. Murphy*, 116 R.I. 54, 69, 352 A.2d 661, 669 (1976) (upholding the Agriculture and Forestry Act dealing with fresh water wetlands G.L. 1956 (1976 Reenactment) §§ 2–1–18–25 *inter alia* on equal-protection grounds).

■ Santini claims a further violation of his right to equal protection by what he characterizes as the council's selective enforcement of the governing statute and regulations. He claims that construction similar to his proposals is located in the immediate vicinity of parcels A and B. Santini argues that such construction has been expressly allowed or acquiesced in by the council and that the council has discriminatorily applied its rules and regulations against him to deny his applications. How-

ever, aside from the showing that nearby construction exists, the record is entirely devoid of evidence that would support Santini's claim of discrimination. He offered no proof that these other projects were not commenced either before the creation of the council or with the council's approval.

■ Santini's contentions that the act violates his rights of due process under the Fourteenth Amendment must also fail. Santini argues that the act arbitrarily operates to deny his rights as a property owner—what are commonly referred to as rights of "substantive" due process. This attack falls short because the protection of water and associated ecosystems is a valid state objective to which the act bears a rational relationship. *See Milardo v. Coastal Resources Management Council*, R.I., 434 A.2d at 268–70. Santini also argues that the act is defective procedurally. He complains that the act lacks a provision to notify property owners when their lands are to be affected by council actions. Santini's claim in this regard is in error. There is adequate provision for notice to interested parties concerning actions to be taken by the council. Section 46–23–11 specifically makes applicable to these procedures the Administrative Procedures Act, including the notice provisions contained therein.

■ Santini next takes issue with the application to his case of statutory amendments that were enacted subsequent to the time that he filed his applications with the council. It is Santini's position that in her review of the council's decision, the trial justice erroneously applied § 46–23–6 D, as amended by P.L. 1977, ch. 270, § 1. He points out that as originally enacted, § 46–23–6 D(a) granted the council authority over "water areas," but nowhere does there appear to be a grant of similar authority over, as Santini puts it, "the so-called land areas under its jurisdiction." The 1977 amendment speaks more broadly of "the areas under its jurisdiction." Even if we assume that it was error for the trial justice to apply an amendment that the legislature enacted after Santini had filed his applications, we consider such error to be harmless.

As the statute was originally enacted in P.L. 1971, ch. 279, the authority of the council to act on Santini's applications can be found in subparagraph (b) of § 46–23–6 D. Subparagraph (b) gave the council the authority to pass upon the "physical alteration of intertidal salt marshes." Certainly the crux of this entire case is the effect that the implementation of Santini's proposals will have on the adjacent intertidal salt marsh.

■ In like manner, Santini states that the council inappropriately applied to this case a statement of council plans, policies, and regulations that were not adopted until 1975, two years after Santini filed his applications. Again, assuming that error exists, we find that no harm resulted. It is clear that § 46–23–6 B(1) allows the council to test an application against a "resources management plan or program." Nevertheless, the council is not limited to this single avenue of inquiry. Subsection (3) allows the council to examine whether or not an applicant's proposal will "significantly damage the environment of the coastal region." Subsection (3) is prefaced with the disjunctive "or." It is clear that the council is empowered to reach a conclusion guided by the principle of "significant damage" regardless of whether a specific management plan applies or even exists. Indeed, the council made a specific finding pursuant to subsection (3) that significant damage would result. We have examined the record fully in reference to Santini's other due-process arguments and conclude that they are without merit.

Before turning to the evidence, we shall consider Santini's urging that we disregard the additional evidence taken by the council as a result of the 1977 remand. Santini asserts that the order of remand was invalid because the council failed to comply fully with § 42–35–15(e). He claims that the council did not affirmatively show "that there were good reasons for failure to present it [the material additional evidence] in the proceeding before the agency."

The record indicates that the council's motion for remand came on for hearing before the Superior Court presiding justice. He requested affidavits in support of the council's motion for remand that would state "*particular* facts" (emphasis original) which were not presented in the first hearing.

The council presented the affidavit of marine biologists Arthur R. Ganz and George L. Seavey which gave a detailed assessment of the likely affect of Santini's proposed construction upon the salt marsh. The parties also presented their views to the presiding justice in oral argument. He then granted the council's motion with the stipulation that further evidence be limited to the issue of damage to the marsh.[3]

■ We believe the remand was proper. The presiding justice had before him what was at that time the record, which the council considered incomplete. This was evidence with which the council was to discharge its factfinding responsibilities. The remand was granted in the valid pursuit of finality, which is one of the goals of the Administrative Procedures Act. Since the factfinding process is the exclusive domain of the administrative agency, its ability to make decisions based upon the most complete record available is of great importance. We are confident that the council realizes the necessity that the record be as complete as possible. Finality must be its goal. The council should not take lightly its prerogative to request a remand, nor should a remand be ordered unless the request is meritorious and the need clear. We are satisfied in the situation before us that the

**3.** Santini argues in his brief that the council subjected him to continued harassment and mistreatment at the remand hearings. On the first day the council attempted "to challenge the plaintiff's compliance with municipal regulations" in order to dismiss Santini's applications by means of "a technicality," the council's "favorite weapon."

The order of remand, however, carried a stipulation subscribed to by both parties that the order would not preclude the issue of whether, as a matter of regulatory procedure, Santini's applications were properly before· the council.

steps it took in the present case were acceptable. We predicate our view upon a careful review of the record of the first hearing. The first hearing left important questions of possible damage to the coastal environment unanswered. Clearly, the council felt that Santini's first presentation was insufficient to satisfy his statutory burden of proving that substantial damage to the environment would not result. Our conclusion concerning the propriety of seeking a remand in this case would have been different, however, had Santini's presentation included the appropriate evidence.

The council in its March 29, 1978 remand decision made specific findings of fact regarding the effect of Santini's construction proposals upon the subject environment. The council concluded, regarding both parcel A and B, that the "[p]roposals by the applicant will significantly damage the environment of the coastal region."

The council heard testimony that the entire salt marsh is a delicately balanced environment providing both food and habitat to the organisms found there. The marsh and pond area is also a food source for the citizens of this state. The council found that the proposed construction would adversely and irrevocably harm the environment by allowing an increase of freshwater runoff into the salt marsh. The vegetation that would result from the introduction of fresh water into the salt marsh would be a deficient source of food for marine life. The placing of fill necessary to the construction upon parcel A would directly destroy part of the marsh. The proposed sewage-disposal systems on both parcels would not be entirely free of polluting effect. There was testimony from both sides confirming that some sewage effluent consisting of certain nitrates and phosphates would find its way into the marsh. The council's experts established that given the delicate environmental balance involved, the marsh would not successfully absorb these harmful substances and avoid damage. Finally, the sewage-treatment systems would be partially underwater each day because of the changing tides—indeed the possibility of flooding from time to time

would cause the entire system to be submerged. Relying on its findings, the council concluded that the applicant had failed to meet his burden of proof and that the coastal environment would suffer significant damage.

The role of this court on a petition for certiorari is quite limited. We do not reverse the factual conclusions of an administrative agency unless they are totally devoid of competent evidentiary support in the record. *Milardo v. Coastal Resources Management Council*, R.I., 434 A.2d at 272. We believe that there is evidence in the record competent to support the council's factual conclusions pertaining to both parcels of land in question. Accordingly, the decision of the council must stand.

Santini claims that the council, through its decision, has denied him all beneficial use of the property and that he is therefore entitled to compensation from the state. The issue involves the theory of "inverse condemnation." This occurs when governmental authority acts to deprive an owner of all beneficial use of his property, requiring the public to bear the loss. This obligation to compensate the landowner by virtue of the right to just compensation is guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, as well as by art. I, sec. 16, of the Rhode Island Constitution.

We are required to defer the issue of inverse condemnation until it is raised in the appropriate proceeding with an adequate factual basis. The council has no statutory authority to grant compensation. No evidence in the record exists upon which an appropriate determination of compensation might even be made. *See Milardo v. Coastal Resources Management Council*, R.I., 434 A.2d at 270.

The remaining issues that Santini raises are without merit and need not be specifically discussed. The writ of certiorari is quashed, and the papers are remanded to the Superior Court.

WEISBERGER, J., did not participate.