[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Defendant State of Rhode Island (the State) moves this Court for summary judgment alleging that a special legislative act (special act) extending the applicable statute of limitations and permitting James Osborn (Plaintiff) to recover damages in excess of the statutory limit is unconstitutional. Prior to the date set for trial, the parties filed cross-motions for summary judgment. In memorandum and at oral argument the State raised issues concerning the constitutionality of the special act and whether the statute of limitations had lapsed. Plaintiff objected to these arguments since the State had not previously pleaded them as affirmative defenses. The State immediately made an oral motion to amend its answer to add the affirmative defenses of unconstitutionality and lapse of the statute of limitations. At the completion of oral arguments, the Court reserved decision on all motions.
After offering Plaintiff additional time to respond to the State's motion to amend, this Court, in a separate written decision, found that the State was entitled to amend its answer. In a bench decision, this Court rejected all arguments raised in the summary judgment cross-motions except those raised by the State relative to unconstitutionality and the statute of limitations. The matter now before this Court is whether the General Assembly's special act extending the statute of limitations and permitting Plaintiff to recover damages in excess of the statutory limit is unconstitutional, and whether Plaintiff's cause of action is barred by the statute of limitations.
FACTS
In 1973 the Cannon Paint Company (Cannon) of Philadelphia, Pennsylvania contracted with the State to paint the Newport Bridge. Cannon employed Plaintiff as a painter on the Newport Bridge project. Plaintiff alleges that in September 1973, while working on the bridge project, officials from the Rhode Island Bridge and Turnpike Authority directed him to paint the Plum Beach Lighthouse. Plaintiff contends that he spent approximately two (2) weeks painting the lighthouse.
It is uncontraverted that a substantial number of pigeons inhabit the lighthouse resulting in the accumulation of large amounts of pigeon feces. Shortly after he completed painting the lighthouse in 1973, Plaintiff was diagnosed as suffering from a fungal infection known as pulmonary histoplasmosis. Plaintiff alleges that he contracted pulmonary histoplasmosis from his exposure to pigeon feces while painting the lighthouse. Plaintiff thereafter sought further medical attention in August 1982 for blurred vision in his left eye. It was then determined that histoplasmosis was responsible for Plaintiff's diminished vision, and that progression of the disease could eventually result in a loss of vision in both eyes.
At the January 1983 session, the Rhode Island General Assembly passed a special act authorizing Plaintiff's negligence action against the State. 1983 R.I. Acts and Resolves 115. The special act specifically provides:
 SECTION 1. The State of Rhode Island and Providence Plantations hereby authorizes an action to be brought against the State and the Rhode Island Bridge and Turnpike Authority by James Osborn of the City of Newport upon a claim for damages alleged to have been sustained by him as a result of his contracting a disease known as "histoplasmosis" due to the negligence of the State of Rhode Island, its agents, servants and employees and of the Rhode Island Bridge and Turnpike Authority, its agents, servants, and employees in allowing him to be exposed to harmful bacteria at the "Plum Beach" Lighthouse owned by the State.
 SECTION 2. James Osborn is hereby granted permission to pursue such civil action against the aforementioned parties in Superior Court for the County of Newport. Said action shall be brought within two (2) years after the date of passage of this Act. He shall be accorded the same rights and privileges with respect to procedural and substantive rules and law as are accorded to other litigants in the Superior Court, including but not limited to the right to a trial by jury and the right to join as defendants in the action any other persons, liable for the aforementioned injuries.
 SECTION 3. If the finder of fact at such trial determines that the negligence of the State of Rhode Island and Providence Plantations, acting through its agents, servants, and employees, and/or the Rhode Island Bridge and Turnpike Authority, acting through its agents, servants, and employees, was a legal cause of the aforementioned injuries to James Osborn, then a judgment for damages may be entered against the State of Rhode Island and Providence Plantations which may be in excess of the statutory amount of liability allowed by Chapter 9-31 of the General Laws but not in excess of Five Hundred Thousand Dollars ($500,000.00) plus interest and costs.
In effect, this special legislative act established a new and independent two-year statute of limitations for Plaintiff's cause of action, and provided Plaintiff with independent authorization to recover in excess of the statutory limit up to $500,000. The provisions of this special act notwithstanding, the applicable statute of limitations for causes of action accruing against the State prior to May 8, 1974 was one year.[1] For causes of action accruing prior to May 4, 1984, the statutory limitation on damages was $50,000.[2] The Rhode Island General Assembly originally waived the State's sovereign immunity in 1970 with the enactment of R.I. Gen. Laws § 9-31-2. See 1970 R.I. Pub. Laws ch. 181 § 2.
On March 17, 1984, Plaintiff filed a tort action against the State alleging that the Rhode Island Turnpike and Bridge Authority was negligent in directing Plaintiff to paint the lighthouse, and that the State, as owner of the lighthouse, knew or reasonably should have known that the accumulated pigeon feces constituted a human health hazard. The case proceeded to trial in 1989 and the jury returned a verdict for the State. The presiding trial justice granted Plaintiff's motion for a new trial and the Rhode Island Supreme Court affirmed. A second trial was scheduled to proceed before this Court on January 21, 1991.
On January 17, 1991, this Court entertained oral argument on the parties' cross-motions for summary judgment. At oral argument the State moved this Court to amend its answer to add timeliness and unconstitutionality as affirmative defenses. In a separate written decision, this Court found that the State was entitled to amend its answer since Plaintiff failed to demonstrate extreme prejudice. All arguments supporting the parties' cross-motions for summary judgment were rejected except those relative to timeliness and unconstitutionality.
The State contends that the special legislative act authorizing plaintiff's of the statutory limitation and establishing an independent statute of limitations violates the equal protection clauses of both the state and federal constitutions. If the special act is unconstitutional, the State argues that Plaintiff's cause of action is time barred since the applicable statute of limitations in 1973 was one year. Plaintiff, however, contends that the Rhode Island Supreme Court has previously upheld the validity of §§ 9-1-25 (statute of limitations for actions against the State) and 9-31-4
(legislative power to authorize suits in excess of damages limitation) as general legislation. Alternatively, if the special act is unconstitutional, Plaintiff asserts that he is entitled to recover up to the $50,000 statutory limit in effect prior to May 8, 1984.
STANDING
As a preliminary issue, Plaintiff questions whether the State has standing to assert a constitutional challenge to a statute enacted by the General Assembly. This Court is cognizant of the split of authority from other jurisdictions relative to whether a state agency has sufficient standing to raise a constitutional challenge against legislative acts.[3] While Rhode Island case law indicates that a municipality, as an entity of the State, lacks standing to challenge the constitutionality of a state statute, no cases specifically address whether the Attorney General, representing the State as a party defendant, has standing to challenge a legislative act. See Brown v. Elston,445 A.2d 279 (R.I. 1982); Chariho Regional High School Dist. v.Treasurer of Hopkinton, 109 R.I. 30, 280 A.2d 312 (1971).
In the case at bar, the Attorney General is the only party adverse to Plaintiff. To deny the Attorney General standing would imply that no party could ever challenge the validity of this special act. Carried to its logical conclusion, the implications from such a holding would produce the absurd result that no party could ever challenge special legislative acts conferring benefits to named individuals.
Furthermore, a review of R.I. Gen. Laws § 9-24-27 (1985) indicates that the Attorney General may indeed have standing to raise constitutional challenges to legislative acts. Section9-24-27 provides in pertinent part:
 Whenever in any proceedings, civil or criminal, legal or equitable, in the superior court . . ., any question of law shall arise, or the constitutionality of an act of the general assembly shall be brought into question upon the record, which in the opinion of the court, or in the opinion of the attorney general, if the state be a party to such proceeding . . ., is of such doubt and importance and so affects the merits of the controversy that it ought to be determined by the supreme court . . ., the court in which the cause is pending shall certify such question . . . to the supreme court.
The Rhode Island Supreme Court has held that § 9-24-27 authorizes certification of important legal and constitutional issues only where the trial justice, after careful consideration, is unable to reach a decision. State v. Walsh, 108 R.I. 518, 277 A.2d 298
(1971).
In 1959, both the governor and the house of representatives sought an advisory opinion from the Rhode Island Supreme Court with respect to the constitutionality of certain statutes. In declining to render an opinion, the court held that § 9-24-27
authorized the Attorney General to certify the legal issues to the court prior to commencement of the equity actions in superior court. See Opinion to Governor, 88 R.I. 392, 149 A.2d 341
(1959); Opinion to House of Representatives, 88 R.I. 396,149 A.2d 343 (1959). Although standing was not at issue, the Rhode Island Supreme Court clearly interpreted § 9-24-27 as authorizing the Attorney General to seek review of legislative acts that are potentially unconstitutional.
Turning to the case at bar, it would appear that § 9-24-27
authorizes the Attorney General to question the constitutionality of the special act. There is no affirmative requirement that the Attorney General only act in defending the constitutionality of legislative acts, nor is there a prohibition against the Attorney General from questioning an act's validity. Since the Attorney General is a party to the case in his capacity as the State's legal representative, and the constitutionality of the act is certainly in question, this Court is satisfied that § 9-24-27
provides the Attorney General with sufficient standing to assert a constitutional challenge. A contrary conclusion would produce the anamolous result that while the Attorney General would not have standing to question the act's constitutionality before this Court, it could nevertheless move to certify the constitutionality issue to the supreme court. The authority of the Attorney General to raise this constitutional challenge at this level is implicit in previous supreme court decisions holding that certification is permitted only when the trial justice is unable to reach a conclusion. Since this Court has undertaken to resolve the constitutional issues herein presented, certification to the supreme court under § 9-24-27 is not required.
It is clear that the Attorney General is properly before this Court on nonconstitutional issues relative to the State's liability in negligence under a special legislative act. Since the special act involves only Plaintiff and the State, no other party could possibly challenge the act's constitutionality. Based on the particular facts of the case at bar, this Court is of the opinion that the Attorney General has a unique and proper interest in asserting the constitutional invalidity of the special act.
of the argument that it is the Attorney General's responsibility to defend the constitutionality of legislative acts. While this proposition is generally true, it cannot be absolute in its application. To hold otherwise would imply that the Attorney General is obligated to faithfully defend legislative acts that are patently unconstitutional. Such a proposition defies both logic and common sense. Undoubtedly, the Attorney General has acted properly in asserting the constitutional challenges now before the Court.
EQUAL PROTECTION UNDER RHODE ISLAND CONSTITUTION
The State challenges the constitutionality of the special act under Article I § 2 of the Rhode Island Constitution. Since the special act was passed on May 13, 1983, the Court's review must focus on the constitutional provisions in effect at that time. Prior to its amendment at the 1986 Rhode Island Constitutional Convention, Article I § 2 provided:
 [a]ll free governments are instituted for the protection, safety, and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens.[4]
Despite the absence of a specific equal protection clause, the Rhode Island Supreme Court consistently has held that the general language of Article I, § 2 prior to 1986 was the functional equivalent of an equal protection guarantee.
See, e.g., City of Warwick v. Almac's, Inc., 442 A.2d 1265, 1270 (R.I. 1982); Sweetman v. Town of Cumberland, 117 R.I. 134, 145, 364 A.2d 1277, 1288 (1976); Gomes v. Bristol Mfg. Corp.,95 R.I. 126, 128, 184 A.2d 787, 789 (1962). Since the pre-1986 language of Article I, § 2 essentially operates as an equal protection guarantee, this Court is satisfied that there exists a sufficient constitutional basis upon which it may scrutinize the special act now before it.[5]
Although the concept of equal protection mandates like treatment of all persons similarly situated, a fundamental principle of equal protection analysis is that not all legislative classifications are constitutionally impermissible.See Boucher v. Sayeed, 459 A.2d 87, 91 (R.I. 1983). State legislatures ordinarily possess broad discretion in enacting laws that affect some classes of citizens differently than others.Id. In analyzing constitutional challenges to legislative classifications, the reviewing court must determine whether the differential treatment properly furthers an appropriate government interest. Id. Where differential treatment either infringes on fundamental rights or results in a suspect classification, strict scrutiny mandates that only a compelling state interest can support such discrimination. Id. Conversely, where no fundamental rights or suspect classes are implicated, the court merely determines whether the differential treatment bears some reasonable or rational relationship to a legitimate state interest. Id. Under traditional rational basis analysis, a challenged classification is valid if, at the time of passage, any state of facts can reasonably be conceived to support it.Burrillville Racing Ass'n, v. State, 118 R.I. 154, 157,372 A.2d 979, 982 (1977).
At the outset, it is important to recognize that all legislative acts exist under a presumption of constitutionality.Santini v. Lyons, 448 A.2d 124, 126 (R.I. 1982). Since the special act now in question involves neither a suspect classification nor fundamental rights, rational basis analysis is appropriate for determining its validity. This Court, therefore, may find the special act unconstitutional only if it is convinced, beyond a reasonable doubt, that there exists no reasonable or rational basis for the special classification. SeeGomes, supra, at 129, 184 A.2d at 790.
Plaintiff argues that in challenging the special act, the State is essentially challenging the validity of §§ 9-1-25
(statute of limitations for special acts) and 9-31-4
(legislature's power to authorize damages in excess of statutory limits).[6] Plaintiff, without citing applicable case law, contends that the special act cannot be invalid since it was passed within the parameters of these statutory sections, which our Supreme Court has favorably reviewed on many occasions. This argument is entirely without merit. While it is true that the General Assembly may possess the inherent power to enact certain special legislation, such special acts must comport with fundamental principles of constitutional law. Thus, State's constitutional challenge properly applies only to the special act and not the general provisions of §§ 9-1-25 and 9-31-4.[7]
It is clear that the special act specifically permitted Plaintiff to maintain this negligence action against the State irrespective of general statutory provisions relative to the statute of limitations and the applicable damages limitation. Whether such special legislation violates the equal protection guarantees of the Rhode Island Constitution is an issue of first impression. Other jurisdictions, however, most notably Connecticut and Maine, have examined the constitutionality of special legislative acts similar to the one involved herein.[8]
Two decisions from the Maine Supreme Court are directly on point. As early as 1825, the Maine Supreme Court recognized that special acts providing individuals with exemptions from general statutes were repugnant to the concept of equal protection. InLewis v. Webb, 3 Me. 326, 336 (1825), the court stated:
 On principle then it can never be within the bounds of legitimate legislation, to enact a special law, or pass a resolve dispensing with the general law . . . and granting a privilege and indulgence to one man, by way of exemption from the operation and effect of such general law, leaving all other persons under its operation. Such a law is neither just reasonable in its consequences . .
Similarly, in Nadeau v. State,[9] the Maine Supreme Court recognized a long-standing judicial vigilance against ad hoc legislation that singles out named individuals for benefits not available to the general citizenry. Id. at 114. In the absence of unusual factual circumstances removing an individual from a class of all others similarly situated, there is no rational basis to support a special act's discrimination in favor of the individual. Id. at 113-14.
The Supreme Court of Connecticut has also addressed the constitutionality of special legislative acts, holding that "no enactment creating a preference can withstand constitutional attack if the sole purpose of the General Assembly is to grant personal gain or advantage to a named individual." State ex rel.Higgins v. Civil Service Comm'r, 90 A.2d 862, 864 (1952). In a separate case, the court held that there existed no public purpose sufficient to sustain a special enactment allowing a named individual to maintain a cause of action otherwise barred by the statute of limitations. Merly v. State, 558 A.2d 977, 985 (Conn. 1989). Absent compelling equitable or moral considerations, a special act favoring protection of the laws.[10]
The principles of equal protection do not require that laws operate uniformly on all individuals provided there exists a rational basis for imposing differential treatment. No enactment creating a preference can survive a constitutional challenge where the sole objective of the General Assembly is to confer personal gain or advantage to an individual over others similarly situated. See State ex rel. Higgins, supra, at 864.
While laboring under a presumption of constitutionality, this Court can discern no reasonable or rational basis to support this discriminatory special act. Indeed, other courts addressing the same issue have held that there is no rational basis to support a special act such as the one under review. At the time plaintiff contracted this disease, there existed general statutory and common law prerequisites to the State's liability in negligence. Any person injured as a result of the State's negligence could recover only in accordance with the law as it existed at the time of injury. Notwithstanding these general limitations on the State's liability, the General Assembly passed a special act in 1983 that established a new and independent statute of limitations solely for Plaintiff's cause of action, and authorized Plaintiff's recovery in excess of the statutory limit not to exceed $500,000. While § 9-31-4 does empower the General Assembly to enact special legislation, all special laws must nevertheless comport with fundamental principles of constitutional law. A finding to the contrary would suggest that the state legislature is otherwise free to favor special interests to the detriment of the general citizenry. Such a conclusion is repugnant not only to the constitution but to common sense as well.
While this Court is not unmindful of the seriousness of Plaintiff's injuries, it cannot avoid the conclusion that the special act clearly contravenes the equal protection guarantees of the Rhode Island Constitution. There exists no rational basis to support the act's discrimination in favor of Plaintiff over all others who may have suffered personal injuries due to the State's negligence. Since this Court does not otherwise find the existence of compelling equitable circumstances, it is convinced, beyond a reasonable doubt, that the special act is constitutionally invalid.
EQUAL PROTECTION UNDER FEDERAL CONSTITUTION
The Fourteenth Amendment to the United States Constitution specifically provides that no state may deny any person within its jurisdiction equal protection of the laws. While the equal protection clause essentially operates as a restriction on legislative power, states typically retain considerable discretion in enacting laws that affect similarly situated persons differently. Clements v. Fashing, 457 U.S. 957, 963 (1982). When assessing an equal protection challenge under the Fourteenth Amendment in the absence of suspect or quasi-suspect classifications, the reviewing court must employ a rational basis analysis. See Personnel Administrator of Mass. v. Feeney,442 U.S. 256, 272 (1979). The rational basis test pursuant to federal equal protection analysis is identical to that employed when evaluating the same challenge under the Rhode Island Constitution. A challenged statute will survive rational basis scrutiny only where the court finds a reasonable or rational basis to support the legislative classifications. Clements, supra, at 963.
In reviewing the special legislative act under the equal protection guarantees of the Rhode Island Constitution, this Court has already concluded that there is no rational or reasonable basis to support the special treatment afforded Plaintiff by the General Assembly. This Court has also concluded that there exists no compelling equitable or moral circumstances to justify favoring Plaintiff over other persons similarly situated. In the absence of a rational basis or otherwise compelling circumstances, this Court must and does conclude that the special legislative act is constitutionally invalid under the equal protection clause of the Fourteenth Amendment to the United States Constitution.
STATUTE OF LIMITATIONS
Without the benefit of the special act, Plaintiff's right of recovery against the State now depends on the general laws that existed at the time of injury. Given the length of time that has elapsed since Plaintiff's injury in 1973, a review of the law relative to the applicable statute of limitations is particularly important in assessing whether Plaintiff's claim is still viable. Plaintiff initially contends that the law of the case doctrine precludes this Court from addressing the statute of limitations issue. In the alternative, plaintiff argues that the discovery rule tolled the statute of limitations until he discovered that histoplasmosis was responsible for his vision problems in 1982.[11] Plaintiff further argues that he complied with the two year statute of limitations then in effect by filing a complaint on March 17, 1984. Since he properly complied with the limitations period, Plaintiff asserts that he is entitled to recover up to the 1982 $50,000 statutory damages limitation.
At the outset, this Court must address whether the law of the case doctrine precludes review of the statute of limitations issue. The law of the case doctrine essentially prevents a issues in a case which previously have been the State moved this Court to dismiss plaintiff's cause of action alleging that, notwithstanding the special act, the applicable limitations period had lapsed. The Court subsequently denied the State's motion.
In denying the State's motion to dismiss in 1984, this Court essentially determined that Plaintiff had complied with the statute of limitations as established by Plaintiff's special act. While the State alleged that the General Assembly was without authority to revive a time barred cause of action, the central issues decided with respect to the motion did not involve the constitutionality of the special act under the equal protection clause. Since the Court did not previously address and resolve the constitutional issues now before it, the law of the case doctrine in no way precludes consideration of the statute of limitations issue as it relates to the constitutional invalidity of the special act.
Whether Plaintiff has complied with the statute of limitations depends on the applicability of the discovery rule. Plaintiff contends that the discovery rule tolled the statute of limitations until he learned of the severity of his disease in 1982. In essence, the discovery rule is an equitable principle that postpones the running of the statute of limitations until a plaintiff discovers, or in the exercise of reasonable diligence should discover, the causal connection between the defendant's alleged conduct and the plaintiff's injury. See Doe v.LaBrosse, 588 A.2d 605 (R.I. 1991). Pursuant to the Rhode Island Supreme Court's decision in Doe, it is the responsibility of the trial justice to conduct an evidentiary hearing before determining the specific date of the plaintiff's discovery and the applicability of the discovery rule. Id. at 606-07.
Although Plaintiff asserts the applicability of the discovery rule to his cause of action, he has not otherwise moved this Court for a special evidentiary hearing to ascertain its applicability. Considering the current posture of this case, however, this Court is of the opinion that a special evidentiary hearing addressing the discovery rule's applicability may be inappropriate at this time. Given Plaintiff's stated intention to seek review by the Rhode Island Supreme Court of the constitutional issues decided herein, this Court is convinced that a decision on the discovery rule at this point may be contrary to both the interests of judicial economy and the best interests of the parties.[12] This Court, therefore, declines to address whether the discovery rule applies to Plaintiff's cause of action.
CONCLUSION
Notwithstanding the split of authority relative to whether a state agency has standing to challenge a state statute, this Court is otherwise convinced that, given the unique factual circumstances, the Attorney General has standing to challenge the constitutional validity of the special act. A significant review of existing case law satisfies this Court, beyond a reasonable doubt, that there exists no rational or reasonable basis to support the special act. This Court, therefore, is convinced that the special act violates the equal protection guarantees of both the Rhode Island and United States Constitutions. Determination of whether the discovery rule applies to Plaintiff's cause of action to tell the statute of limitations requires a special evidentiary hearing, which, at this time, the parties have not yet sought.
Counsel shall prepare an appropriate judgment for entry.
[1] In 1974, the General Assembly amended § 9-1-25 to enlarge the limitations period from one to two years. See 1974 R.I. Pub. Laws ch. 188 § 1. The 1974 amendment applied prospectively to causes of action accruing after May 8, 1974. Skaba v.Capasso, 117 R.I. 512, 514, 368 A.2d 570, 571 (1974). Thereafter, the General Assembly further amended § 9-1-25 in 1984, extending the statute of limitations from two to three years. See 1984 R.I. Pub. Laws ch. 84 § 2.
[2] Prior to amendment in 1984, R.I. Gen. Laws § 9-31-2 limited the State's liability in negligence to $50,000. See 1970 R.I. Pub. Laws ch. 181 § 2. On May 4, 1984, the General Assembly increased the damages limitation from $50,000 to its current amount of $100,000. See 1984 R.I. Pub. Laws ch. 87 § 1.
The damages limitation provided in § 9-31-2 applies only where the state is engaged in a discretionary or governmental function. A plaintiff seeking recovery for tortious conduct resulting from a governmental function must first prove either the existence of a special relationship or egregious conduct by the State. See Bierman v. Shookster, 590 A.2d 402, 403-40 (R.I. 1991). Where, however, the State is engaged in a proprietary function — activity normally engaged in by private individuals or corporations — the damages limitation does not apply.
In the instant action, Plaintiff alleges that the Rhode Island Bridge and Turnpike Authority was negligent in directing him to paint the lighthouse. This Court is of the opinion that the State's responsibility for maintaining its bridges is clearly a governmental rather than proprietary function. Plaintiff further alleges that the State, as owner of the lighthouse, failed to properly protect against exposure to histoplasmosis. Assuming, arguendo, that the State did in fact own the lighthouse, this Court is nevertheless satisfied that ownership and maintenance of a lighthouse is clearly a governmental function not ordinarily engaged in by private individuals. Since this Court finds that maintenance and function, in the absence of the special act Plaintiff's damages resulting from the State's negligence could not otherwise exceed the statutory limitation. Even if this Court has erroneously concluded that maintenance of the bridge and lighthouse is a governmental function, it is clear that the State's constitutional challenge remains viable with respect to the special act's extension of the generally applicable statute of limitations.
[3] A review of relevant case law indicates inconsistency among the jurisdictions that have addressed the standing issue. InBrann v. State, 424 A.2d 699, 702 (Me. 1981), the Maine Supreme Court questioned the Attorney General's standing to assert constitutional challenges against legislative acts. While the court reached the merits without resolving the standing issue, it noted that many exceptions exist to the general rule that state agencies have no standing to raise constitutional challenges.Id. In Nadeau v. State, 395 A.2d 107 (Me. 1978), the Maine Supreme Court never addressed the Attorney General's standing when he challenged a special legislative act on equal protection and special legislation grounds.
The Nebraska Supreme Court, however, has taken a very conservative approach to the standing issue. In State ex rel.Douglas v. Gradwohl, 194 Neb. 745, 235 N.W.2d 854 (1975), the court held that while the Attorney General had standing to raise a constitutional challenge based on the special legislation clause, he did not have standing to raise an equal protection argument.
The Connecticut Supreme Court has taken the most liberal approach to the standing issue. It has extended standing to both municipalities and the Attorney General to raise constitutional challenges to legislative acts. See Ducharme v. City of Putnam,
285 A.2d 313, 320 (Conn. 1971); Tough v. Ives, 294 A.2d 67, 77 (Conn. 1972). The court has taken the position that it would be an abdication of judicial responsibility to ignore an allegation of constitutional infirmity and resolve a case on its nonconstitutional issues merely because a municipality or a state agent is the adverse party. See Ducharme, supra, at 320;Ives, supra, at 77.
[4] At the 1986 Rhode Island Constitutional Convention, Article I § 2 amended to add the following language: "No person shall be deprived of life, liberty, or property without due process of law, nor shall any person be denied equal protection of the laws. No otherwise qualified person shall, solely by reason of race, gender or handicap, be subject to discrimination by the state, its agents, or any person or entity doing business with the state. Nothing in this section shall be construed to grant or secure any right relating to abortion or the funding thereof."See R.I. Const. Art. I, § 2.
[5] The Court is not unmindful of previous opinions from the Rhode Island Supreme Court holding that the pre-1986 language of Article I, § 2 was advisory rather than mandatory. See Sepe v.Daneker, 76 R.I. 160, 68 A.2d 101, 105 (1949); Sayles v.Foley, 38 R.I. 484, 96 A.2d 340, 343 (1916). As late as 1958, however, in an advisory opinion, the Rhode Island Supreme Court refused to affirmatively acknowledge whether pre-1986 Article I § 2 language was advisory or mandatory. Opinion to the Governor,88 R.I. 202, 204, 145 A.2d 87, 89 (1958).
In more recent decisions addressing constitutional challenges to legislative acts, the court has applied traditional equal protection analysis without considering whether pre-1986 Article I, § 2 language was advisory or mandatory. See Almac's, Inc.,supra, at 1270; Sweetman, supra, at 145, 364 A.2d at 1288. Indeed, in Santini v. Lyons, 448 A.2d 124, 126 n. 2 (R.I. 1982), the court, after mentioning that Article I, § 2 was advisory, held that the language itself was essentially an equal protection guarantee. The court went on to apply traditional equal protection analysis before deciding that the statute was constitutionally valid. This recent line of cases clearly indicates that, regardless of whether pre-1986 Article I, § 2 was mandatory or advisory, the Rhode Island Supreme Court nevertheless accepted constitutional challenges premised on Article I, § 2, and scrutinized them under well established equal protection principles.
[6] Plaintiff's reliance on § 9-31-4 as the basis for the General Assembly's power to authorize damages against the State in excess of the statutory limits expressed in § 9-31-2 is misplaced. The specific authorization contained in § 9-31-4
empowers the General Assembly to authorize tort damages in excess of statutory limits only against cities, town and fire districts. Section 9-31-4 does not contain a provision relative
The absence of specific authority in § 9-31-4 is not, however, fatal to the special act. Notwithstanding the limited power conferred by § 9-31-4, the General Assembly possesses inherent authority to otherwise enact special and general legislation. must be consistent with relevant constitutional provisions.
[7] The Rhode Island Supreme Court in McCarthy v. Johnson,574 A.2d 1229 (R.I. 1990) narrowly addressed the limited question of whether § 9-1-25 was generally applicable legislation. The court, however, did not address whether a special act conferring a benefit on a named individual was repugnant to the equal protection guarantees of Rhode Island Constitution.
[8] See, e.g., Cox v. State, 279 N.W. 482 (1938) (special act in favor of plaintiff denied equal protection to others similarly situated); Lucero v. Highway Dep't., 55 N.M. 157, 228 P.2d 945 (1951) (legislation permitting recovery for individual beyond statutory limit invalid); Jack v. State,183 Okla. 375, 82 P.2d 1033 (1937) (special law invalid where general laws could apply); Collins v. Commonwealth, 262 Pa. 576, 106 A. 229 (1919) (act waiving sovereign immunity for a named plaintiff was unconstitutional special legislation); Serrine v. State,132 S.C. 241, 128 S.E. 172 (1925) (enactment of special law is unconstitutional where general laws apply).
[9] 395 A.2d 107 (Me. 1978). In Nadeau, the State of Maine challenged the validity of a special act granting a prisoner a special tort action against the state for serious constitutional rights violations during his criminal trial. Id. at 110. While the court acknowledged the constitutional repugnance of such special acts, it affirmed the validity of the special act in question since the unique facts created a great improbability that other individuals similarly situated would be denied the same privilege. Id. at 114.
Unlike the Rhode Island Constitution, Maine's constitution contains a specific clause which prohibits the passage of special legislation. Const. art. IV, 3, § 13. InNadeau, the Maine Supreme Court considered the challenged special act under both the equal protection and special legislation clauses. Notwithstanding the unique factual circumstances, the court held that special legislative dispensation from generally applicable laws for individual citizens violated both equal protection of the laws and the special legislation clause.Nadeau, supra, at 113.
[10] Hiller v. City of East Hartford, 355 A.2d 1, 5 (Conn. 1974). In an early case, the Connecticut Supreme Court upheld a special act waiving notice requirements for suit against municipality on equitable grounds because the plaintiff had relied on the city clerk who negligently and erroneously prepared the necessary notice documents. Sanger v. City of Bridgeport,198 A. 746, 749 (Conn. 1938). Sanger, however, has since been limited to the equitable considerations discussed therein.Hiller, supra, at 5.
[11] On January 27, 1992, Plaintiff moved this Court to amend its complaint to add the applicability of the discovery rule to this cause of action. At this time the Court will pass on Plaintiff's motion to amend since, in a notice pleading jurisdiction such as Rhode Island, it is satisfied that paragraph ten of Plaintiff's original complaint alleges sufficient facts to invoke operation of the discovery rule.
[12] Since the discovery rule issue remains unresolved, Plaintiff may obtain Rhode Island Supreme Court review only by writ of certiorari. Given the magnitude of the issues involved in this case, this Court properly could have certified the constitutional questions to the Rhode Island Supreme for interlocutory review. Since this Court has already considered the constitutional issues raised herein, it decided that certification would not be necessary.