DECISION
In this civil action the plaintiff, Anthony Palazzolo, appeals under G.L. 1956 (1993 Reenactment) § 42-35-15 from a decision of the defendant, Coastal Resources Management Council (CRMC), issued on February 18, 1986, in which the CRMC denied the plaintiff's application to fill a contiguous wetland adjacent to Winnapaug Pond with clean, bank-run gravel to establish a private beach club for seasonal use. The plaintiff's complaint was filed on April 3, 1986. Although the record appears to have been certified to this Court from the CRMC on June 6, 1986, it has since been lost or misplaced. The Court relies for this Decision on so much of the record as is disclosed by the parties in their respective memoranda. In addition, each of the parties has furnished the Court with such copies of the record as they have in their own respective files.
On March 11, 1993 the plaintiff attempted to withdraw his appeal from the decision of the CRMC "without prejudice to his right to file a new application or proceed with a petition for assessment of damages for inverse condemnation or other compensation under the Constitution of the United States and the Constitution of the State of Rhode Island." The plaintiff appears, however, to have changed his mind, because a briefing schedule was ordered on June 9, 1993. The case was assigned for decision to this Justice on August 11, 1994, but briefing was not finally concluded until October 17, 1994.
There is also pending in the Supreme Court an appeal from the dismissal by the Court under Rule 41(b) of an action in Washington County Superior Court, in which the plaintiff sought to have damages assessed for the inverse condemnation of this land. The motion to dismiss for lack of diligent prosecution and failure comply with the Rules of Civil Procedure and/or orders of the court was granted on January 24, 1994. In that action, filed in June 1988, the plaintiff had joined the CRMC, alleging that its denial of the application, which is the subject of this appeal, constituted part of the deprivation of all beneficial use of his property through strict enforcement of regulations, for which he is entitled to compensation. It is not entirely clear whether the plaintiff perceived an inter-relationship between this action and the Washington County action.
I.
The plaintiff apparently has owned a parcel of land since the early 1960's in the Town of Westerly north of Atlantic Avenue and bordering on the southerly shore of Winnapaug Pond. He applied for the assent of the CRMC early in 1985 to permit him to fill approximately 11.4 acres with approximately 34,200 cubic yards of bank-run gravel. The filling is necessary to create a private beach club to provide a private area for swimming, picnicking, shellfishing and boating without the erection of any structures on the property. The owner proposed to locate a dumpster on the site from May 1 through October 31, as well as a number of smaller trash barrels at various locations on the property. There would also be parking for fifty cars with boat-trailers, "port-a-johns," picnic tables and concrete barbecue pits on the premises.
The entire land area is part of a statutory coastal wetland. The owner and his engineer proposed in the application to minimize environmental impact by not placing any fill in a fifty-foot "buffer" zone at the shoreline, by grading the slope of the fill from the set-back at a 1' to 6' rise, and by seeding the slope with Soil Conservation Seed grass seed as soon as the filling was accomplished. It was also proposed to control overland drainage of the fill area, itself, by the use of bank-run gravel fill and by contouring the fill inland toward a processed stone filtering bed in the interior of the land area. The owner's engineer claimed that the filling of this area would allow an increased enjoyment of recreational boating, fishing and swimming. He conceded, however, that filling this marshland would have "somewhat of an impact upon the biological communities that exist there now. . ."
The plaintiff's application drew prompt objection from the Town Engineer and the Conservation Commission of the Town of Westerly. The CRMC's staff engineer reported that the proposed alteration to the wetland presented a "significant potential for increased impacts to the pond ecosystem." A qualified biologist reported to the CRMC that the proposal represented "a direct
loss of salt marsh and its inherent values." (Emphasis in original.) She also described a great number of potential indirect impacts. The proposal also drew objection from the administrator of the Statewide Planning Program and the State Division of Fish and Wildlife.
A sub-committee of the CRMC held a public hearing on July 30, 1985. At that hearing the sub-committee received the negative reports of the staff engineer and the biologist in evidence in the record. The adverse report of the Statewide Planning Program, a favorable report of the Historical Preservation Commission, and the negative report from the State Division of Fish and Wildlife were also received in evidence. The applicant testified in his own behalf and presented testimony from the engineer who assisted in the preparation of his plans. The engineer testified that filling the area was necessary to allow people to park vehicles on the property. He pointed out that people were presently illegally using a private way across the plaintiff's land to gain access to the pond. He acknowledged that the proposal would have an environmental impact on the area. He also acknowledged that there were other public and private accesses to the pond. The only use for the land which would completely reduce environmental impact, according to this witness, would be to leave it in its present state. He had no objection to the reports of the staff engineer and biologist, except that he thought that a layer of stable ground might underlie the surface layer of Matunuck mucky peat, which consists of six to eighteen inches of surpressable land. The sub-committee heard from some interested members of the public, none of whom favored granting the application. The sub-committee recommended that the CRMC find certain facts and that the application be denied.
On November 26, 1985 the matter came before the CRMC at a regular meeting. The plaintiff was granted leave to present the testimony of Irene H. Stuckey, whose qualification as an expert in the field of environmental plant physiology was unquestioned. She gave it as her opinion that the plaintiff's land is "an extremely valuable salt marsh and should be preserved." She testified that any further filling of the marsh of which the plaintiff's property is a part should be stopped. In her written report, which was received in evidence, she described the marsh as "extremely valuable in terms of plant species that grow there, and as a habitat for birds." Further, "it is one of the more valuable tidal salt marshes in Rhode Island." The CRMC voted to approve the sub-committee's recommendation that the application be denied. The decision of February 18, 1986 ensued.
In his memorandum the plaintiff contends that the decision of the CRMC was arbitrary, capricious and characterized by an abuse of discretion or a clearly unwarranted exercise of discretion (§ 42-35-15(g)(6)) and was an unconstitutional taking of private property for public use in violation of the Constitutions of the United States and the State of Rhode Island (§ 42-35-15(g)(1)).
II.
As to the first ground, the plaintiff first argues that the CRMC is collaterally estopped from making the following findings of fact:
 "5. The marsh which would be filled under this proposal presently provides refuge and feeding areas for larval and juvenile finfish and shellfish and for migratory waterfowl and wading birds. Additionally, mosquito ditching enhances [s]edge through the high marsh area, enabling access of [f]auna to cover areas and permits the exchange of nutrient/waste products."
 "6. Filling of the marsh would destroy the natural shoreline protection, decrease sediment trapping and accretion, decrease flood storage, eliminate or greatly reduce nutrient retention in the area."
He points to what he claims to be a decision of the Chief of the Division of harbors and rivers in the Department of Natural Resources issued on April 1, 1971. In that decision the Chief of the Division purported to grant the plaintiff's 1963 application to dredge channels in Winnapaug Pond and to deposit dredged materials on his waterfront land. The Chief found:
 "(6) We find that neither application No. 2 (the 1963 application) nor No. 3 (a substantially similar 1966 application) will have any significant effect on wildlife."
According to the plaintiff's testimony at the public hearing on July 30, 1985, the assent issued pursuant to this purported decision was withdrawn without explanation in the record seventeen days after its issuance. No further action was taken by the plaintiff on this application and the purported, but obviously revoked, decision of the Chief of the Division of harbors and rivers. Nor did the plaintiff make any further explanation on the record of his subsequent proceedings, if any, with regard to this decision and assent.
It is important to note that the 1971 decision and assent were obviously known to and in the possession of the plaintiff at the time of the sub-committee hearing on July 30, 1985 and at the hearing before the full CRMC on November 26, 1985. Nevertheless, he deliberately chose not to produce them, or any other available documentation regarding his 1963 and 1966 applications and their subsequent litigation history. The CRMC was led to believe in 1985 that all the plaintiff expected it to decide was whether or not he was then entitled to special exceptions from the strict requirements of the Coastal Resources Management Program (CRMP) on the basis of the record presented at the hearing. Since the plaintiff was fully aware at that time of the prior findings, which he now seeks to interpose to estop contrary fact-finding by the CRMC, he must be deemed to have waived any possible factual benefit from the 1971 findings. He surely is not claiming now that he wanted to mislead the CRMC or that his failure is due to oversight. After all, he did mention those earlier proceedings in another context at the sub-committee hearing.
It is not necessary in this case to reach the question of whether or not the doctrine of collateral estoppel bars the CRMC from finding the facts it did. Nor need the Court decide whether the decision of the CRMC depends on the facts which the plaintiff claims it is estopped from finding. Two reasons mandate this conclusion.
First, under § 42-35-15 this Court reviews the agency's fact-finding on the basis of the record before the agency. It is the sufficiency of the evidence in the record to support the facts found by the agency which is tested judicially on administrative appeal. Easton's Point Association, Inc. v.Coastal Resources Management Council, 559 A.2d 633, 636 (R.I. 1989). Second, the rule that issues not raised before a hearing tribunal will not be reviewed on appeal is especially pertinent when an appellant attempts to raise estoppel issues for the first time on appeal. See Gross v. Glazier, 495 A.2d 672, 675 (R.I. 1985). In addition, the Court agrees that a doctrine of collateral estoppel may be applied only with great caution to administrative proceedings for the reasons set forth in CRMC's supplemental memorandum, referring to Restatement of Judgments,Second (1982), § 83 and comments. Accordingly, the defendant's motion to strike portions of the plaintiff's memorandum is moot, since the Court rules that the issue is not properly raised in this proceeding.
The plaintiff next argues that the CRMC decision was an arbitrary and capricious abuse of discretion because he had established that he had met all the standards for a special exception to the criteria established in the CRMP. Section 130A of the pertinent version of the CRMP provides as follows:
 "A. Special exceptions may be granted to prohibited activities to permit alterations and activities that do not conform with a Council goal for the areas affected or which would otherwise be prohibited by the requirements of this document only if and when the applicant has demonstrated that:
 (1) The proposed activity serves a compelling public purpose which provides benefits to the public as a whole as opposed to individual or private interests. The activity must be one or more of the following: (a) an activity associated with public infrastructure such as utility, energy, communications, transportation facilities; (b) a waterdependent activity that generates substantial economic gain to the state; and/or (c) an activity that provides access to the shore for broad segments of the public.
 (2) All reasonable steps shall be taken to minimize environmental impacts and/or use conflict.
 (3) There is no reasonable alternative means of, or location for, serving the compelling public purpose cited."
The CRMC concluded that the plaintiff had failed to satisfy his burden of proof on the record that he satisfied all the conditions necessary to warrant its exercise of discretion to grant a special exception.
The plaintiff contends that his proposal to fill more than eleven acres of coastal wetlands in order to develop a private beach club serves a compelling public purpose which provides benefits to the public as a whole. He says that his beach club would be an activity that provides access to the shore forbroad segments of the public. He further says that there is no reasonable alternative means of, or location for serving that compelling public purpose.
The evidence in the record is clear that the public already has abundant access to Winnapaug Pond, including some access over a private way across the plaintiff's land to a boat ramp in its present condition. The CRMC was fully justified in finding that there was nothing compelling about the public purpose the plaintiff sought to serve. In addition, nothing in the record tends to show that the plaintiff's private beach would provide access to the shore for broad, as opposed to narrow, segments of the public. Finally, the record does not support the conclusion that there is no reasonable alternative to the plaintiff's proposal to serve the purpose he contends to be public. The plaintiff does not show that the public purpose he claims to serve cannot be served by selective development of his land without covering more than eleven acres of a valuable salt water marsh with gravel fill.
In the final analysis, however, this Court is not permitted to substitute its conclusions of fact for those of the agency, where they are derived from the presence or lack of supporting evidence in the record. Environmental Scientific Corp. v.Durfee, 621 A.2d 200, 208 (R.I. 1993). The granting of a special exception under Section 130 of the CRMP is an exercise of discretion by the CRMC. In the exercise of that discretion the CRMC is called upon to balance the adverse impact of a proposed activity upon the goals and policies of the CRMC against the public interest served by the activity. General Laws 1956 (1991Reenactment) § 46-23-1(a) provides in part ". . . that preservation and restoration of ecological systems shall be theprimary guiding principal upon which environmental alteration of coastal resources will be measured, judged and regulated." The CRMC is thereby mandated to give environmental concerns primacy over all other considerations, including even activities serving the compelling purposes described in Section 130. The economic consequences of such a mandate are the subject of the next contention of the plaintiff.
The CRMC's decision to deny this application was neither arbitrary nor capricious, nor was it an abuse of discretion. It was based on the plain weight of the evidence before it that the plaintiff's proposed activity served no compelling public purpose.
III.
As a second ground for reversal of the CRMC decision the plaintiff alleges that he is deprived by that decision of all beneficial use of his property without any compensation in violation of the Constitutions of the United States and the State of Rhode Island. The plaintiff is clearly wrong. If he has in fact been deprived of all beneficial use of his land by the strict enforcement of the CRMP policies without the benefit of the special exceptions he has requested, he may in an appropriate action recover damages for inverse condemnation. Milardo v.Coastal Resources Management Council, 434 A.2d 266, 270 (R.I. 1981). See also, Santini v. Lyons, 448 A.2d 124, 129 (R.I. 1982).
An appeal from the decision of an administrative agency is not an appropriate action in which to determine whether the enforcement of an administrative regulation, from which a particular exception is sought, constitutes a deprivation of all beneficial use of a claimant's property. All that can be decided in this proceeding is that this refusal to grant this particular exception to these policies regarding the filling of coastal wetlands was justified on the record presented.
Even granting that the plaintiff here may have made a showing that there is no permitted use of his land under the CRMP from which he can derive any economic benefit, that showing was totally irrelevant to any issue for decision before the CRMC. Counsel for the plaintiff conceded as much in colloquy with the sub-committee in July 1985, after the plaintiff was permitted to testify over objection that he had offered to sell his land to the State, when he said: "I'm not asking you to take the checkbook out at this time." Since the evidence was irrelevant, the State had no appropriate opportunity or motive to contradict or rebut it. Although the plaintiff's witnesses were allowed to testify that any development at all of the plaintiff's land would adversely impact the environment, none of them testified that no economically feasible activity could be the subject of a special exception. While it was Dr. Stuckey's opinion that no further filling of the marsh should be permitted, she could not testify that none would be permitted by the CRMC, if its impact was appropriately minimized or mitigated. In an appropriate timely action the State would be permitted to contradict or rebut the plaintiff's evidence, if it could.
It is true that the original complaint filed in this case on April 3, 1986 did allege generally that the denial of his application constituted an unconstitutional taking for which he did not receive compensation in violation of his constitutional rights. Among his prayers for relief he did seek an adjudication that the CRMC "acted in violation of the plaintiff's constitutional rights." The prayers for relief also claim money damages. Nevertheless, only the utmost liberality in the construction of pleadings would allow a Court or a party to guess that the plaintiff was seeking damages for inverse condemnation under the doctrine advanced in Annicelli v. Town of SouthKingstown, 463 A.2d 133, 139 (R.I. 1983). The record of this disorganized litigation does not disclose that the defendant ever answered the plaintiff's complaint, but the parties have always, until the plaintiff filed his memorandum on March 8, 1994, regarded this action as an administrative appeal and not a claim for damages for inverse condemnation.
Whether or not that claim was any more or less unambiguously raised in the Washington County case now on appeal in the Supreme Court is beside the point. The parties have consistently treated this action as a pure administrative appeal calling only for a judicial review of the CRMC decision on the statutory grounds provided in § 42-35-15(g). It is far too late in this litigation to bring in the State, itself, as a defendant to afford the attorney-general an opportunity to represent and defend the General Treasury against the plaintiff's claim for money damages. It may well be that the pending Washington County case is the last fragile reed upon which the merits of the plaintiff's claim now cling.
As for this action, a judgment will enter for the defendant denying and dismissing the plaintiff's complaint. The defendant will present a form of judgment for entry on notice to the plaintiff.